**Scott Patrick SCOTT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 64716.**

Court of Criminal Appeals of Texas, En Banc.

July 11, 1984.

John Weeks, Abilene, for appellant.

Patricia A. Elliott, Dist. Atty., and Jorge A. Solis, Asst. Dist. Atty., Abilene, Robert Huttash, State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

Appellant was convicted of the offense of escape under V.T.C.A., Penal Code Sec. 38.-07. Punishment was assessed at 5 years.

The indictment in this cause alleges in pertinent part that appellant "did then and there unlawfully, intentionally and knowingly escape from confinement in the Taylor County, Texas jail situated in the City of Abilene." V.T.C.A., Penal Code Sec. 38.07 provides:

"A person arrested for, charged with, or convicted of an offense commits the offense of escape if he escapes from custody."

Appellant argues that the evidence is insufficient to sustain a conviction for escape.

At the time of the alleged escape, appellant was being held in the Taylor County jail pending this transfer to the Texas Department of Corrections. The Taylor County jail consists of a four story brick structure that is enclosed by a chain link fence with barbed wire strung along the top of the fence. The Taylor County jail was used to house prisoners and administrative officials of the Sheriff's office.

Sometime around 1:00 a.m. on August 25, 1979, a corrections officer in the jail received information that there was going to be an escape from the jail around 5:30 a.m. that same day. The corrections officer relayed this information to various other jail officials and then proceeded to examine the hole on the east side of the building where the escape was supposed to take place. At the time she examined the hole, it was not large enough to allow anyone to pass through it. Based upon this information a deputy sheriff and the jail administrator set up a surveillance on the east side of the jail around 4:45 a.m. on August 25, 1979. Sometime around 5:00 a.m. they began to notice activity in the area of the jail

where the hole was located. The activity appeared to be someone enlarging the hole from the inside of the jail and lasted until 7:40 a.m. when appellant emerged from the hole. At that time appellant was inside the fenced yard area, but the gate to the yard was unlocked. Prior to appellant exiting the yard, he was arrested by the deputy sheriff. Appellant was a trusty in the Taylor County jail and was free to leave his cell at 5:00 a.m. every morning.

The offense of escape is comprised of three elements: (1) escape (2) from custody (3) after having been arrested for, charged with or convicted of an offense. *Garcia v. State*, 537 S.W.2d 930, 932. Appellant contends that he never departed from custody since he was still within the enclosed yard at the time of his arrest. Custody is defined as "detained or under arrest by a peace officer or under restraint by a public servant pursuant to an order of a court." V.T.C.A., Penal Code Sec. 38.01(2). Confinement, as used in the indictment, is not defined in the Penal Code. The usual dictionary definition for the verb "confine" is "to keep within bounds or imprison." Ballentine's Law Dictionary 244–245 (3rd ed. 1969). Escape is defined in part as "unauthorized departure from custody ..." V.T.C.A., Penal Code Sec. 38.01(3).

■ The testimony revealed that while the yard was part of the Taylor County jail facilities, inmates were not allowed to leave the building at any time unless accompanied by a deputy. The fenced yard was not part of a trustee's assigned area. Appellant completed the offense of escape when he dug out of the building. The walls of the jail building itself were the bounds of appellant's detention and custody. Once he violated this boundary appellant was no longer in the custody of the sheriff's office even though he was under surveillance by

a deputy. The fact that the yard was enclosed by a fence and was part of the jail facilities has no bearing on this issue. The jail administrator testified that appellant was confined to the jail building. Appellant was not authorized to depart from his detention in the jail building itself. See *Webb v. State*, 533 S.W.2d 780, 788. Appellant's first ground of error is overruled.

■ In his second ground of error appellant argues that the indictment is fundamentally defective because it fails to allege that the escape occurred "from a penal institution." The indictment alleged that appellant "escaped from confinement in the Taylor County, Texas jail situated in the city of Abilene." We overrule appellant's second ground of error. See *Legg v. State*, 594 S.W.2d 429, 432.

The judgment of the trial court is affirmed.

CLINTON, Judge, dissenting.

The offense allegedly committed by appellant is denounced in simple terms—one coming within a prescribed category commits an offense "if he escapes from custody." The offense is a felony if he *"is* confined in a penal institution."[1] V.T.C.A. Penal Code, § 38.07(a) and (c)(2).

Apparently, to make the offense a third degree felony the indictment in this cause alleged that appellant did "escape from confinement in the Taylor County Jail situated in the City of Abilene."[2]

Applying those parts of definition of "custody" and "escape," V.T.C.A. Penal Code, § 38.01(2) and (3), that described appellant, the proof must show that while "under restraint by a public servant pursuant to an order of a court" he made an "unauthorized departure from [that] custo-

---

1. All emphasis is added by the writer of this opinion unless otherwise indicated.

2. Whoever drew up the indictment evidently equated "custody" and "confinement," since it is not alleged that appellant escaped from "custody." The notion is erroneous, of course, for the statutory felony offense sought to be alleged demands that escape from *custody* be by one

then *confined* in a penal institution. Had that distinction been noted at the outset perhaps some of the problems that now challenge solution would not be here. In any event, we need not further concern ourselves with a "confinement" aspect; that appellant was confined in the Taylor County Jail is undisputed.

dy." There is no doubt that appellant was under such restraint and that his enlarging a hole in a wall of the jail and moving through it to the outside was unauthorized. Thus, the question narrows to whether the evidence demonstrates what appellant did amounts to "departure of custody."

But for existence of the chain link fence, topped with barbed wire, enclosing the yard and jail building, there would be no difficulty in finding that the moment he exited the hole in the wall appellant had departed from custody. But *Webb v. State*, 533 S.W.2d 780 (Tex.Cr.App.1976), decided under the former penal code since the offense had been committed in April 1973,[3] is not even "see" authority for the majority; and though Judge Teague suggests in his dissenting opinion that Webb escaped from a building in which he was held prisoner, what the opinion reveals is that Webb and other trusties were painting offices on the sixth floor of a courthouse, each having been assigned a particular office by a jailer in charge of the paint detail. The circumstantial evidence showed that Webb opened wider an office window, climbed through and leaped or fell to a fourth floor roof; he was found lying with a broken leg on a third floor roof. The *Webb* Court never indicated that appellant "broke jail" in the traditional sense; rather it merely found evidence was sufficient to show his *intent* to commit the offense of escape without explicating any rationale for its finding, *Webb*, at 787–788. If *Webb* has application to the case at bar, it can only be that a prisoner need not be within the physical confines of jail itself in order to depart from custody. Thus, the significance of the enclosure bounded by a chain link fence, topped with barbed wire, with a closed but unlocked gate in it.

With all that in mind, I am not only unable to agree with the majority reasoning that jail walls were necessarily the bounds of custody and once he violated the wall "appellant was no longer in the custody of the sheriff's office," but also am concerned that drawing bounds of custody at the exterior side of a jail wall in this case is dangerous precedent for other situations not yet confronting the criminal justice system in which "custody" must be extended beyond the jail wall to show a completed escape rather than just an attempt.

In the instant case the key ingredient of "custody" is "restraint," § 38.01(2). Though not in our Penal Code, the term is defined by Article 11.22, V.A.C.C.P., *viz:*

"By 'restraint' is meant the kind of control which one person exercises over another, not to confine him within certain limits, but to subject him to the general authority and power of the person claiming such right."

See Black's Law Dictionary (Revised Fourth Edition) 1477: Restraint is "confinement, abridgement, or limitation. * * * Hindrance, confinement, or restriction of liberty." Common usage includes "a device that restricts movement," Webster's New Collegiate Dictionary (G. & C. Merriam Co. 1979). A fence such as that shown by the evidence here is designed, erected and, in my view, intended to embrace within its closure the whole of restraint by the public servant in charge of the facility.

Looking objectively at the matters of record in this cause, to make his departure from custody, appellant still had to get outside that fence. It is not enough for the jail administrator to say that appellant was "confined to the jail building" and, therefore, he was "not authorized to depart from his *detention* in the jail building itself." [4] As used in the statute, custody by

3. Article 353b, P.C.1925, as amended, made it an offense for any prisoner "while confined in jail or while permitted at large as trusty, or while in the lawful custody of any officer" to escape or attempt to escape. We are not informed by the *Webb* opinion of what the indictment alleged his

precise status to be in committing the offense, although he was a trusty at the time.

4. The kind of "detention" included in the statutory definition of "custody" is other than "under restraint," for conditions of custody are serially stated: "*detained or under arrest by a peace*

restraint is conceptualized as one perimeter from which one does not depart while still within one of its interior segments. Restraint is like a maze: though one may find his way through some of its rooms and corridors, it cannot be said that he has departed from the maze until he exits the last one. A prisoner who manages to leave his cell without authority, but fails to make his way out of the jail itself, may have made an unauthorized departure from his designated place, but he has not yet departed from custody by restraint.

For these reasons I am not persuaded that the State has proven that appellant escaped from custody within the meaning of § 38.07. Whether the evidence shows attempt to commit the offense of escape ought to be left for another day.

I respectfully dissent.

TEAGUE, Judge, dissenting.

Scott Patrick Scott, appellant, was convicted by the trial court of committing the offense of escape. See V.T.C.A., Penal Code, Section 38.07, which provides: "A person arrested for, charged with, or convicted of an offense commits [the offense of escape] if he escapes from *custody.*" [Emphasis Added].

I believe that when the Legislature of this State enacted the provisions of Section 38.07, supra, it intended for those provisions to be applied only in the event that the prisoner had departed from the geographical limits of his custody, and not merely from the limits of his confinement. Of course, the Legislature could have easily stated that an escape occurs when one escapes from the geographical limits of his confinement. But, it did not do so. One obvious reason the Legislature did not do so lies in the fact that prisoners who are housed in county jails usually remain there for short periods of time, and are given a great deal of freedom of movement. Thus, the handling of prisoners kept in a county jail is much different from the handling of prisoners who are kept in the penitentiary.

officer *or* under restraint by a public servant pursuant to an order of a court." Accordingly,

The majority holds that the evidence is sufficient to sustain appellant's conviction for the offense of escape. Because I believe that the evidence only established an attempted escape from custody, and not an escape from custody, I must respectfully dissent.

The indictment in this cause alleges in pertinent part that appellant "did then and there unlawfully, intentionally and knowingly escape from *confinement* in the Taylor County, Texas jail situated in the City of Abilene." [Emphasis Added].

Section 38.07, supra, provides that the offense of escape occurs when one escapes from "custody." However, the State did not allege that appellant escaped from "custody," but, instead, alleged he escaped from "confinement."

The Legislature of this State has specifically defined the word "escape" to mean the following: "'Escape' means unauthorized departure from *custody* or failure to return to *custody* following temporary leave for a specific purpose or limited period, but does not include a violation of conditions of probation or parole." V.T.C.A., Penal Code, Section 38.01(3). [Emphasis Added]. In this instance, we are only concerned with the first mode of escape, unauthorized departure from *custody.*

The Legislature has also specifically defined the word "custody" to mean "detained or under arrest by a peace officer *or under restraint by a public servant pursuant to an order of a court.*" Section 38.01(2). [Emphasis Added]. In this instance, prior to the time of the alleged escape, the trial court had remanded appellant to the custody of the Sheriff of Taylor County until the Sheriff could transfer appellant to the penitentiary. There is nothing in the record regarding specifics as to just where appellant would actually be kept by the Sheriff until he was transferred to the penitentiary, or what the conditions of his confinement would be while he was in the custody of the Sheriff of Taylor Coun-

we are not here concerned with detention but with restraint.

ty. For reasons not reflected in the record, while appellant was awaiting transfer to the penitentiary, someone designated him to be a "trusty."

Even though the State used the word "confinement," and not the word "custody," in the indictment, because the offense of escape is committed only if one escapes from *custody*, it became incumbent upon the prosecution to establish that appellant escaped from the *custody* of the Sheriff of Taylor County.

The Taylor County jail, whose keeper is the Sheriff of Taylor County, see Art. 5116, V.A.C.S., consists of a four-story brick structure that is enclosed by a chain link fence with barbed wire strung on the top of the fence. Appellant was captured outside of the building in a grassy area that was between the building and the fence. It is uncontroverted that appellant never got outside of the fenced-in portion of the complex.

The majority holds that the above evidence is sufficient to establish that appellant escaped from the custody of the Sheriff of Taylor County. However, in reaching its result, it never makes a distinction between the terms "custody" and "confinement," nor does it discuss the differences between the meaning of the terms.

The majority opinion states the following: "The testimony revealed that while the yard was part of the Taylor County jail facilities, inmates were not allowed to leave the building at any time unless accompanied by a deputy. The fenced yard was not part of a trustee's assigned area... Appellant was not authorized to depart from his detention in the jail building itself." To me, even if the record did reflect that appellant was personally informed of these internal orders, which it does not, such would only show violations of internal orders governing *confinement*, and not escape from the *custody* of the Sheriff of Taylor County. Can there be any doubt that in this instance the grounds outside of the building that were enclosed by the fence were under the control of the Sheriff

of Taylor County? If so, as long as appellant remained inside of the fence, how can it be said that he escaped from the custody of the Sheriff of Taylor County? See *People v. Lakin*, 118 Mich.App. 471, 325 N.W.2d 460 (1982), where it was held that the term "prison" includes the grounds of the prison. I believe that where a county jail is enclosed, as here, the term "county jail" includes the enclosed grounds.

The majority opinion advises us to "See *Webb v. State*, 533 S.W.2d 780 (Tex.Cr.App. 1976)." After re-reading *Webb v. State*, supra, I find that if the majority is actually relying upon that decision as authority for sustaining appellant's conviction, because of the factual differences between the two cases, its reliance is sorely misplaced.

The facts stated in *Webb v. State*, supra, reflect that the defendant in that cause was captured on the outside of the building that houses the Jefferson County Courthouse, in which prisoners, including the defendant, were kept. The building also served as quarters for what is usually found in most courthouses of this State, namely, courtrooms and offices of county and state officials. The opinion indicates that the grounds of the courthouse were not enclosed. In the case at bar, however, the Taylor County Jail Complex was enclosed by a chain link fence.

The facts in *Webb* also reflect that the defendant was captured by the authorities on the outside of the building. When captured, the defendant was suffering from a broken leg which he had apparently sustained after he had jumped from the outside of the building on the sixth floor level of the building and landed on the fifth floor level of the building, or had broken his leg after he had jumped from the outside of the building on the fifth floor level of the building and landed on the fourth floor level of the building.

By what is stated in *Webb*, it is obvious to me that the geographical boundaries of the Jefferson County Jail were the outside walls of the building. Thus, once it was established that the defendant Webb was found outside of the building without au-

thority to be there, this established that he had escaped from the custody of the Sheriff of Jefferson County. In this cause, however, the geographical boundaries of the Taylor County Jail Complex were not limited to the outside walls of the building, but included the grounds that were enclosed by a chain link fence which had barbed wire strung out on the top of the fence. I find that the fence which enclosed the Taylor County Jail Complex was the outside geographical boundary of the Taylor County Jail.

Thus, the bright line distinction, which the majority overlooks, between the facts in *Webb* and here is that in this cause the Taylor County Jail Complex was enclosed by a chain link fence with barbed wire strung out on the top of the fence, whereas the Jefferson County Jail was not so enclosed. It is therefore obvious that the geographical boundaries of the Jefferson County Courthouse building were the outside walls of the building, whereas here the boundaries were set by the chain link fence which surrounded the jail complex.

The record is clear that appellant was captured before he had removed himself from the geographical limits of the Taylor County Jail Complex. Thus, at the time appellant was captured, he was still in the lawful custody of the Sheriff of Taylor County, and had not completely escaped therefrom.

I have no doubt whatsoever that appellant committed the offense of attempted escape, but, contrary to the majority opinion, I also have no doubt that he is not guilty of committing the offense of escape. Therefore, I dissent to the majority erroneously affirming appellant's conviction for escape.