Lawhorn v. State 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-106-CR





BILL LAWHORN, JR.,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 101,676, HONORABLE TOM BLACKWELL, JUDGE PRESIDING


 





 A jury found Bill Lawhorn, appellant, guilty of burglary of a habitation with intent
to commit felony escape; the jury assessed punishment, enhanced by a previous felony conviction,
at imprisonment for thirty years. Tex. Penal Code Ann. § 30.02 (West 1989). On appeal,
appellant challenges the legal sufficiency of the evidence to support the conviction. We will
reverse the conviction and order an acquittal.

 Appellant was arrested for aggravated sexual assault on December 22, 1989. About
a month after his arrest for that offense, Travis County Sheriff's Deputy Julie Waddle was
assigned to transport appellant, along with one other inmate, from the City of Austin jail to the
Travis County jail. As they arrived at the county jail in a Sheriff's Department van at
approximately 9:30 p.m., appellant, in handcuffs, fled on foot. Deputy Waddle pulled her gun
and ordered appellant to stop, but decided not to shoot. She chased him a short distance while
radioing for assistance, but she soon lost sight of him and gave up the chase. Confident that other
officers would look for appellant, Deputy Waddle returned to her van to finish transporting the
other prisoner and had no significant role in appellant's subsequent apprehension.

 About a block from the county jail, appellant ran past a car driven by an off-duty
sheriff's deputy, Lieutenant Hal Caldwell. From the jail uniform and handcuffs, Caldwell
recognized appellant as an escaped inmate. Caldwell followed appellant in his car for about half
a block until appellant ran into the courtyard of the Regency Apartments, where Caldwell both
lived and worked as a security guard. Caldwell pulled his gun and ordered appellant to stop, but
he, like Deputy Waddle, decided not to shoot. Caldwell then ran up the sidewalk on the outside
of the complex and took a position on the San Antonio Street side of the complex, waiting to see
if appellant would scale the six-foot fence on that side. About that time, Caldwell heard the sound
of breaking glass inside the complex. Caldwell waited there, but appellant did not come over the
fence. A short time later, three or four jail officers arrived, and Caldwell positioned them around
the perimeter of the apartment complex. Shortly after that, officers from the Austin Police
Department began to arrive. Within a matter of minutes, appellant was found lying on the kitchen
floor in apartment 114, which he had entered by breaking a window. The entire episode lasted
only twenty or twenty-five minutes. Mary Savala, the occupant of the apartment, testified that
she did not give appellant consent to enter her apartment.

 A person commits an offense if he escapes from custody when he is under arrest. 
Tex. Penal Code Ann. § 38.07(a)(1) (West 1989). The offense is a felony if the offense for which
he is under arrest is a felony. Id. § 38.07(c)(1). "Custody" means detained or under arrest by
a peace officer; "escape" means unauthorized departure from custody. Tex. Penal Code Ann. §
38.01(2), (3) (West Supp. 1992).

 In the present case, the trial court charged the jury that, to convict appellant of
burglary, they were required to find beyond a reasonable doubt that he "intentionally or
knowingly enter[ed] a habitation without the effective consent of Mary Savala, the owner, with
intent to commit the felony of escape from custody, in that the said defendant had been arrested
for a felony, to wit: aggravated sexual assault." The charge also included this instruction:



Now if you believe from the evidence that the Defendant on the occasion in
question had already committed the offense of felony escape before he entered the
habitation of Mary Zavala [sic], if he did, or if you have a reasonable doubt
thereof you can not convict the Defendant of Burglary of a Habitation with intent
to commit felony escape, but you will consider whether the Defendant is guilty of
Felony Escape.



 In his first point of error, appellant contends the State failed to prove that he
entered Savala's apartment with the requisite intent. We agree.

 Appellant left Deputy Waddle's custody when he ran from the van or, at the very
latest, when Waddle gave up the chase and returned to the van containing her other prisoner. See
Casey v. State, 681 S.W.2d 178 (Tex. App.Houston [14th Dist.] 1984, pet. ref'd). The offense
was complete at that point. The Court of Criminal Appeals has noted that escape is not a
continuing offense. Fitzgerald v. State, 782 S.W.2d 876, 881 n.9 (Tex. Crim. App. 1990). 
Thus, appellant could not still have been in the process of escaping when he broke into Savala's
apartment and, as a matter of law, he could not have "intended" to commit the offense of escape
when he entered the apartment. Appellant may have entered the apartment with the intent to resist
or evade arrest, Tex. Penal Code Ann. §§ 38.03, .04 (West 1989 & Supp. 1992), but the evidence
is conclusive that he did not commit the offense of burglary with intent to commit felony escape,
because he had already completed the offense of escape.

 For example, the present case contains far stronger evidence of a completed escape
than in Scott v. State, 672 S.W.2d 465 (Tex. Crim. App. 1984), in which a conviction for escape
was affirmed. In Scott, Taylor County jail authorities set up a surveillance as a result of having
been informed of a planned escape from the jail. At the predicted time, the defendant emerged
from a hole he had dug through or under one of the walls of the jail building. The defendant's
passage through the hole placed him in a fenced, but unlocked, yard area within the jail facilities,
where he was promptly arrested by the heedful authorities. The defendant contended that he had
never departed from custody and, therefore, had not completed his escape. The court rejected this
argument:



 [W]hile the yard was part of the Taylor County jail facilities, inmates were
not allowed to leave the building at any time unless accompanied by a deputy. The
fenced yard was not part of a trustee's assigned area. Appellant completed the
offense of escape when he dug out of the building. The walls of the jail building
itself were the bounds of appellant's detention and custody. Once he violated this
boundary appellant was no longer in the custody of the sheriff's office even though
he was under surveillance by a deputy.



672 S.W.2d at 466 (emphasis added); see also Annotation, Conviction for Escape Where Prisoner
Fails to Leave Confines of Prison or Institution, 79 A.L.R.4th 1060 (1991).

 It is certainly true that "actual, physical `hands-on' restraint is not a prerequisite
to a showing of custody in the context of the offense of escape." Harrell v. State, 743 S.W.2d
229, 231 (Tex. Crim. App. 1987); accord Gilbert v. State, 787 S.W.2d 233, 236 (Tex. App.Fort
Worth 1990, no pet.). The term "custody" clearly implies, however, a degree of physical
limitation, restraint, or control; if it meant merely a legal "right" to control, as the dissent seems
to argue, then there could never be an escape from custody.

 The nature and scope of the physical limitation of custody depends on the facts of
each case:



 What constitutes a departure from custody, within the meaning of this rule,
depends on the circumstances of the particular confinement. Thus, a prisoner may
be guilty of an actual departure, and escape, merely by leaving his cell, or some
other area, or by going outside the prison walls, even though he does not leave
prison property, or by leaving his jail through an unlocked door.



30A C.J.S. Escape § 5(b), at 403 (1992). Thus, the inmate in Scott was physically confined to
the walls of the prison building; such a tangible barrier generally provides an easy definition of
the physical limits of a prisoner's custody. Cf. Fitzgerald, 782 S.W.2d at 879 ("Appellant . . .
committed the felony offense of escape by moving beyond bounds of Beto II Unit without
authority and his offense was complete at that point. . . . In every statutory sense, then, the
moment he was outside confines of the penitentiary his escape was a fait accompli.").

 In other circumstances, the line of demarcation is less clear, but the existence of
some physical limitation is no less real. In Harrell, for example, the defendant was convicted of
escape for leaving the V.A. hospital where, after his arrest, he had been left unguarded. It is not
clear whether the physical limitation of the defendant's custody confined him to his hospital room,
or to the entire floor that his room was on, or perhaps to all of the hospital grounds. What is
obvious, however, is that there was some physical limit beyond which he was not permitted to go. 
The court in Harrell did not need to address the precise scope of the physical limitation of his
custody, because the prisoner had fled beyond the furthest conceivable limit. Cf. Webb v. State,
533 S.W.2d 780, 787-88 (Tex. Crim. App. 1976) (defendant who was assigned to paint offices
in county courthouse climbed out sixth-story window and was found with broken leg on third-story roof); Casey, 681 S.W.2d at 180-81 (defendant who fled courtroom after judge ordered him
taken into custody was apprehended twenty feet outside courtroom door).

 Likewise, in the present case, there was no clearly defined boundary of appellant's
custody while Deputy Waddle was escorting him from the Sheriff's Department van to the county
jail. We do not need, however, to determine at what precise point appellant's departure from
Deputy Waddle's custody was complete. Appellant fled beyond her reach, out of her sight, and
even beyond her pursuit; he fled off county property, over public streets, and into a private
apartment complex. As in Harrell, whatever the furthest extent of the physical limit of appellant's
custody might have been, he had clearly exceeded it by the time he broke into Savala's apartment.

 This inescapable conclusion is supported not only by the undisputed facts, but also
by direct admissions of the State's witnesses themselves. Deputy Waddle testified as follows:



Q: I believe that you testified that you opened the sliding door of this van.


A: Yes, I did.


Q: And that Mr. Lawhorn got out and started walking towards, I suppose, where
he was supposed to go.


A: He started.


Q: And then he broke and ran?


A: Yes, he did.


Q: And at that point did he leave your custody?


A: Yes, he did.


Q: There's no doubt in your mind about that?


A: No, there is not.


Q: And the only time that he reentered your custody was when?


A: Was when he was later apprehended inside the lady's apartment, Apartment
114. Then that's when I went in and we took him back to the jail.


Q: So it is your testimony that Mr. Lawhorn had indeed escaped from you. Is
that correct?


A: Yes, sir.


Q: There's no doubt about that, is there?


A: No.


Caldwell testified as follows:



Q: Mr. Caldwell, when you first saw Bill Lawhorn, the person later found to be
Bill Lawhorn, running, was he in custody or out of custody?


A: I would say that he was out of custody.



 The difficulty in this case, it seems to us, is that there is a lay meaning of the term
"escape" that is much broader and less exact than the legal definition of the offense. Under the
lay meaning, a fleeing prisoner might not be considered to have truly "escaped" until he had
successfully eluded his pursuers for some indeterminate period of time. Until then, under the lay
interpretation, the prisoner would still be in the process of escaping. Thus, under this definition,
anything a fugitive did during this indeterminate "escaping" period in an effort to "get away"
could be said to have been done with the intent of completing his escape.

 The offense of escape, on the other hand, is defined more precisely: an
unauthorized departure from custody. As is obvious from the cases discussed above, the offense
of escape may, as a legal proposition, be completed long before the fleeing prisoner has
successfully "gotten away," in laymen's terms.

 In the context of the present case, appellant has committed the offense of "burglary"
only if he unlawfully entered Savala's apartment with intent to commit a felony
offensespecifically, the felony offense of escape. Tex. Penal Code Ann. § 30.02(a)(1) (West
1989). In reviewing appellant's conviction, therefore, we have focused on the legal meaning of
"escape," not the lay meaning.

 We hold that the facts in this cause establish conclusively that appellant had
completed a departure from custody before he entered Savala's apartment; accordingly, that issue
was not a question of fact for the jury. Given the particular facts of this cause, even viewing the
evidence in the light most favorable to the verdict, a rational trier of fact could not have found
beyond a reasonable doubt that appellant's departure from custody was not yet complete when he
broke into Savala's apartment and that he entered the apartment with the intent to commit the
offense of escape. See Jackson v. Virginia, 443 U.S. 307 (1979); Griffin v. State, 614 S.W.2d
155 (Tex. Crim. App. 1981). Appellant's first point of error is sustained. Because we sustain
point of error one, we do not reach appellant's second point of error.

 We reverse appellant's conviction and reform the judgment to reflect an acquittal.



 

 J. Woodfin Jones, Justice

[Before Justices Powers, Jones and Kidd]

Reversed and Reformed

Filed: December 9, 1992

[Publish]