In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00181-CR


______________________________




BYRON KEITH DUNCAN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 180th Judicial District Court


Harris County, Texas


Trial Court No. 862007




 




Before Grant, Ross, and Cornelius,* JJ.


Opinion by Justice Ross


*William J. Cornelius, C.J., Retired, Sitting by Assignment


O P I N I O N



 Byron Keith Duncan appeals from the judgment of the trial court, rendered on
Duncan's plea of guilty without an agreed recommendation, on a charge of fraudulent use
and possession of identifying information, Tex. Pen. Code Ann. § 32.51 (Vernon Supp.
2002). Duncan was sentenced to two years in a state jail facility.

 On appeal, Duncan contends his counsel at trial rendered ineffective assistance at
the punishment stage of the trial by (1) failing to object to evidence suggesting Duncan had
committed an extraneous offense; and (2) failing to object to the victims' recommendations
of punishment, which were included in the presentence investigation (PSI) report.

Procedural History


 On March 2, 2001, Duncan executed written waivers of his rights, an
acknowledgment of admonishments by the trial court, and entered his plea of guilty to the
offense charged in this case. A PSI report was ordered.

 The sentencing hearing was held May 24, 2001. The State offered the PSI report
into evidence and rested. Duncan testified in his own behalf and was cross-examined by
the prosecutor.

 The trial court sentenced Duncan to a two-year term of confinement in a state jail
facility, the sentence to run concurrently with two other cases, also on appeal in this Court. (1)

Disposition


 We have reviewed the briefs and all arguments raised therein in our opinion issued
this date in Byron Keith Duncan v. The State of Texas, Cause Number 06-01-00180-CR. 
For the reasons stated in that opinion, we affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: May 30, 2002

Date Decided: August 8, 2002


Do Not Publish

1. See opinions in Cause Numbers 06-01-00180-CR and 06-01-00182-CR, issued
concurrently with the opinion in this case.


 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00092-CR
______________________________


VINCENT BERNARD DICKEY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 22,654


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            While part of an inmate work crew


 in Greenville working under the supervision of jailer
Dixon Latham, Vincent Bernard Dickey stripped off his "jail stripes" and ran away from the work
crew in his T-shirt and boxer shorts. Dickey found some clothes at his mother's house and managed
to elude authorities until the following day, when he was found hiding in a closet in the vacant side
of a local duplex. As a result of the incident, Dickey has now been convicted of escape.


 See Tex.
Pen. Code Ann. § 38.06(a), (c).
            On appeal, Dickey (1) argues the evidence was legally and factually insufficient to prove
various elements of the offense as set out by the Texas Penal Code, (2) asserts there was a material
variance between the indictment and the proof, and (3) claims the jury charge failed to include an
essential element of the offense. We disagree and affirm the judgment of the trial court.
            Of Dickey's three points of error, the first and second, briefed together, present seven,
different, substantive issues. Six of those issues challenge the evidentiary sufficiency of different
elements of the offense, while the seventh issue concerns an alleged material variance between the
indictment and the proof at trial. In recent years, this Court has repeatedly warned litigants not to
combine multiple issues into a single point of error, thereby risking our overruling the composite
point of error as multifarious. See, e.g., Newby v. State, 169 S.W.3d 413, 414 (Tex.
App.—Texarkana 2005, no pet.); Harris v. State, 133 S.W.3d 760, 764 n.3 (Tex. App.—Texarkana
2004, pet. ref'd); Parra v. State, 935 S.W.2d 862, 875 (Tex. App.—Texarkana 1996, pet. ref'd). In
the interest of justice, however, we decline the opportunity to overrule Dickey's first two points of
error on the basis of them being multifarious.
(1)       The Evidence Is Sufficient to Support the Conviction
            There are three elements in the offense of escape: "(1) escape (2) from custody (3) after
having been arrested for, charged with or convicted of an offense." Scott v. State, 672 S.W.2d 465,
466 (Tex. Crim. App. 1984); see also Tex. Pen. Code Ann. § 38.06 (Vernon 2003). The Texas
Penal Code defines "escape," as that term is used in Chapter 38, as an "unauthorized departure from
custody or [a] failure to return to custody following [a] temporary leave for a specific purpose or
limited period . . . ." Tex. Pen. Code Ann. § 38.01(2) (Vernon 2003). The term "custody" is
defined as being "under restraint by a public servant pursuant to an order of a court . . . ." Tex. Pen.
Code Ann. § 38.01(1)(A) (Vernon 2003). 
            In reviewing the legal sufficiency of the evidence, we examine the relevant evidence in the
light most favorable to the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000). In reviewing for factual sufficiency, we view all the evidence in a neutral
light and determine whether the evidence supporting the verdict is too weak to support the finding
of guilt beyond a reasonable doubt or whether evidence contrary to the verdict is strong enough that
the beyond-a-reasonable-doubt standard could not have been met. Threadgill v. State, 146 S.W.3d
654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 486 (Tex. Crim. App.
2004)).
            In the case now on appeal, the State's indictment, which was substantially tracked by the jury
charge, alleged four alternative theories of how Dickey escaped from custody:
Theory 1:  Dickey escaped from the custody of Latham after being convicted of felony theft
in cause number 15,696.
 
Theory 2:  Dickey escaped from the custody of Latham after being convicted of the felony
of delivery of a controlled substance in cause number 15,818.
 
Theory 3:  Dickey escaped from the custody of Latham after being convicted of the felony
of burglary of a habitation in cause number 15,828.
 
Theory 4:  Dickey escaped from the custody of Latham after being convicted of an offense
(an unnamed misdemeanor or felony) for which Dickey was confined to a secure
correctional facility.
 
If the State's evidence is legally and factually sufficient under any of these alternative theories, we
must overrule Dickey's sufficiency challenge. See Sorto v. State, 173 S.W.3d 469, 472 (Tex. Crim.
App. 2005) (where jury charge authorizes conviction on alternative theories, verdict of guilt will be
upheld if evidence was sufficient on any of theories).
            A. The Evidence Was Sufficient to Show Dickey Was in Custody
            In his first and second issues, Dickey contends the evidence is legally and factually
insufficient to prove he was in custody at the time he escaped. The evidence at trial showed Latham,
a jailer


 for the Hunt County Sheriff's Department, had taken Dickey and several other inmates from
the jail as part of a work crew April 17, 2004. As he had many times before, Latham took this
particular group to the Greenville Police Department's satellite office. Latham testified:
The men pretty well knew their jobs. Some were weed eaters. Some were mowers. 
We had two mowers that needed repair. Blades replaced on it. The big mower that
Vincent Dickey drove was on the trailer and this was too small a lot to roll it off for
it. So he got off ostensibly to pick up trash in that site.
 
When time came for the work crew to return to the jail, Dickey had vanished.


 
            Dickey's parole officer, Tina Shepard, testified Dickey was being held in the Hunt County
Jail on a parole revocation warrant on the day he disappeared from the work crew. Shepard also told
the jury that the parole revocation warrant related to Dickey's twenty-five-year prison sentences in
each of three cases (cause numbers 15,696, 15,818, and 15,828), sentences which Dickey had not
yet discharged. The jury also received copies of the judgments of conviction in those cases, as well
as a copy of Dickey's post-arrest confession in which he admitted to (a) being locked up on the parole
revocation warrant, (b) being taken out of the jail as part of a trustee work crew, (c) running away
from the work crew, and (d) removing his "jail stripes" as he ran. Dickey also admitted in that
statement that he had "spent most of the night [between the day of his escape and the day of his
recapture] on the tracks back down in the woods. I was debating on coming back and turning myself
in because I kept thinking about how my mama cried when I was there at [her] house." 
            On appeal, Dickey argues that the three judgments of conviction in cause numbers 15,696,
15,818, and 15,828 may not suffice as the underlying "court orders" on which Dickey had been in
custody at the time of the escape. Dickey contends there must be an additional order from the trial
court specifically authorizing Latham—or, alternatively, naming any duly appointed jailer or sheriff's
deputy—to take custody of Dickey. We disagree that our law requires such an order.
            In general, judgments of conviction in Texas—at least those resulting in
imprisonment—direct the sheriff of the convicting county to "promptly and safely" deliver the
convicted felon to the Institutional Division of the Texas Department of Criminal Justice ("the
Department"), where the convicted felon is to be confined for the term specified in the trial court's
judgment. Thus, the Department's authority to take "custody" of the felon arises from the trial court's
original judgment of conviction. If a felon is released to parole or mandatory supervision, the felon
remains subject to the reasonable and lawful conditions of release imposed by the Department. This
is because release on parole or mandatory supervision is not a form of clemency. See Tex. Gov't
Code Ann. § 508.002 (Vernon 2004). Instead, parole allows the releasee to serve the remainder of
his or her sentence outside the walls of a prison under the supervision of the Department's Pardons
and Paroles Division. Tex. Gov't Code Ann. § 508.001(6) (Vernon 2004). If the felon violates the
terms of those conditions, the Board of Pardons and Paroles ("the Board") may issue a parole
revocation warrant. The Board's authority to issue such a warrant is statutory, see Tex. Gov't Code
Ann. § 508.251 (Vernon 2004), but the Board's ability to exercise such power is contingent on the
Department, and thus the Board, first having been granted custody of the felon by a trial court's
underlying judgment of conviction. Thus, the root authority for any parole revocation warrant is the
original judgment of conviction itself. It necessarily follows that Dickey's argument on appeal—that
an underlying judgment of conviction could not serve as a "court order" by which Latham had lawful
custody of Dickey—is meritless. Latham had custody of Dickey pursuant to the parole revocation
warrant, which in turn relied on the underlying judgments of conviction. Accordingly, using the
standards of review set forth above, we conclude the evidence is legally and factually sufficient to
show Dickey was under restraint by Latham, a public servant, pursuant to the trial court's judgments
of conviction in cause numbers 15,696, 15,818, and 15,828 at the time of Dickey's escape. It was
unnecessary for those judgments to specifically authorize Latham, by name, to take Dickey into
custody.
 
            B. The Evidence Was Sufficent to Show Dickey Was Incarcerated on a Felony
            In his third and fourth issues, Dickey contends the evidence is legally and factually
insufficient to show he was incarcerated


 on any of the three felonies alleged in the indictment at the
time he escaped. We disagree.
            Shepard testified she had been supervising Dickey's parole for each of his twenty-five-year
sentences in cause numbers 15,696, 15,818, and 15,828 before Dickey was placed in the Hunt
County jail. According to Shepard, before his escape Dickey had been in jail pursuant to parole
revocation warrants issued in connection with those underlying felony convictions. Shepard also
told the jury that Dickey had not finished serving his sentence in any of the three underlying felony
convictions specifically alleged in the indictment. As discussed above, copies of those underlying
judgments had been admitted into evidence, establishing Dickey's convictions for burglary of a
habitation, possession of cocaine, and felony theft, each of which resulted in a twenty-five-year
sentence. And, in his own custodial confession, Dickey expressed remorse for leaving the work
crew, an expression that inferentially acknowledged Dickey knew his participation in the work crew
was limited to staying at the work site and performing the duties assigned by Latham. Accordingly,
using the review standards outlined above, we believe the jury could rationally have concluded
Dickey was in Latham's custody due to any of three underlying felonies at the time Dickey escaped. 
Cf. Lawhorn v. State, 898 S.W.2d 886, 890 (Tex. Crim. App. 1995) (offense complete when
appellant ran from jail transport van); Harrell v. State, 743 S.W.2d 229, 230–31 (Tex. Crim. App.
1987) (appellant escaped from VA hospital off prison grounds; conviction affirmed); Dutton v. State,
874 S.W.2d 206, 208–09 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (evidence showed
appellant had not yet discharged twenty-year sentence at time of escape; conviction affirmed).
            C. We Need Not Address Dickey's Confinement in a Secure Correctional Facility
            In his fifth and sixth issues, Dickey contends the evidence is legally and factually insufficient
to show he was confined in a secure correctional facility at the time of his escape. But because the
evidence is legally and factually sufficient under any of the State's first three theories of prosecution,
we need not, and do not, address whether the evidence is sufficient to sustain Dickey's conviction
under the fourth theory of the offense outlined by the indictment. See Sorto, 173 S.W.3d at 472.
(2)       There Is No Material Variance Between the Indictment and the Proof
            In his seventh issue, Dickey contends that a material variance exists between the indictment
and the proof offered at trial. Dickey asserts that—because the underlying felony judgments in cause
numbers 15,696, 15,818, and 15,828 did not specifically designate and authorize Latham, or any
Hunt County jailer, to take custody or supervision of Dickey, yet the proof at trial (those same
judgments) authorized only the Hunt County Sheriff and officials of the Department to take custody
of Dickey—a material variance exists between the indictment and the proof, and Dickey should
receive an acquittal.
            "A 'variance' occurs when there is a discrepancy between the allegations in the charging
instrument and the proof at trial." Hart v. State, 173 S.W.3d 131, 144 (Tex. App.—Texarkana 2005,
no pet.) (quoting Gollihar v. State, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001)). "The widely-accepted rule, regardless of whether viewing variance as a sufficiency of the evidence problem or
as a notice-related problem, is that a variance that is not prejudicial to a defendant's 'substantial
rights' is immaterial." Id. (quoting Gollihar, 46 S.W.3d at 247–48; and referencing Rojas v. State,
986 S.W.2d 241, 246 (Tex. Crim. App. 1998)).
To determine whether a defendant's "substantial rights" have been prejudiced, we
must consider two questions: whether the indictment, as written, informed the
defendant of the charge against her or him sufficiently to allow such defendant to
prepare an adequate defense at trial, and whether prosecution under the deficiently
drafted indictment would subject the defendant to the risk of being prosecuted later
for the same crime.

Id. (citing Gollihar, 46 S.W.3d at 248; Brown v. State, 159 S.W.3d 703, 709 (Tex. App.—Texarkana
2004, pet. ref'd)).
            Dickey's argument is premised on the assumption that Latham could not have lawful custody
of Dickey solely pursuant to those underlying judgments of conviction; Dickey argues a second order
from the trial court is necessary.



            As we have held above, no such separate order was necessary. While acting as a jailer for
Hunt County, Latham had lawful and proper custody of Dickey via the Board's parole revocation
warrant, an entity with such warrant authority pursuant to its own custodial authority over Dickey
as granted by the three underlying judgments of conviction. Thus, because the proof offered at trial
showed Latham had proper custody of Dickey, there was no variance, material or otherwise, between
the indictment's allegation and the proof offered at trial. Both were to the effect that Latham had
proper custody of Dickey.
            We overrule Dickey's first and second points of error.
(3)       The Jury Charge Did Not Omit an Essential Element of the Offense
            In his final point of error, Dickey contends the trial court's charge to the jury failed to submit
an essential element of the offense. Dickey asserts the charge "failed to distinctly set out in the
application paragraph that Dixon Latham, a public servant, must have had custody of Appellant
pursuant to a court order . . . ." 
            When jury charge error is claimed, we must determine first whether there was error in the
charge. McNatt v. State, 152 S.W.3d 645, 654 (Tex. App.—Texarkana 2004, pet. granted). If error
is found, then we evaluate that error under the appropriate harm standard set forth in Almanza. 
Brown v. State, 122 S.W.3d 794, 803–04 (Tex. Crim. App. 2003); see Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984) (op. on reh'g). The standard of review for errors in the jury charge
depends on whether the defendant properly objected. Almanza, 686 S.W.2d at 172. If a proper
objection was raised, reversal is required if the error is "calculated to injure the rights of defendant." 
Id. In other words, an error that has been properly preserved is reversible unless it is harmless. Id.
at 171. If a defendant does not object to the charge, reversal is required only if the harm is so
egregious the defendant has not had a fair and impartial trial. Rudd v. State, 921 S.W.2d 370, 373
(Tex. App.—Texarkana 1996, pet. ref'd). In this case, Dickey did not raise this objection to the trial
court; he must, therefore, show egregious harm if indeed we find error in the charge.
            The elements of the offense of escape are "(1) escape (2) from custody (3) after having been
arrested for, charged with, or convicted of an offense." See Tex. Pen. Code Ann. § 38.06 (Vernon
2003); Scott, 672 S.W.2d at 466; Russell v. State, 90 S.W.3d 865, 870 (Tex. App.—San Antonio
2002, pet. ref'd); Crowder v. State, 812 S.W.2d 63, 68 (Tex. App.—Houston [14th Dist.] 1991, pet.
ref'd). The trial court's charge instructed the jury that the term "custody," as it was used throughout
the charge, meant "under arrest by a peace officer or under restraint by a public servant pursuant to
an order of a court of this state or another state of the United States." Later, in a subsequent
application paragraph, the trial court instructed the jury:
 
Now, if you find from the evidence beyond a reasonable doubt that on or
about the 17th day of April, 2004, in Hunt County, Texas, the defendant, Vincent
Bernard Dickey, did then and there escape from the custody of Dixon Latham, a
public servant, after being convicted [of] a felony offense of Theft of Property of the
value of $750 or more but less than $20,000 in Cause 15,696; and/or after being
convicted for a felony offense of Unlawful Delivery of a Controlled Substance,
namely Cocaine, in Cause 15,818; and/or after being convicted for a felony offense
of Burglary of a Habitation in Cause 15,828; or at the time the said Vincent Bernard
Dickey was confined in a secure correctional facility, namely the Hunt County jail,
then you will find the defendant guilty as charged in the indictment.
            Reading the application paragraph in conjunction with the definition of "custody" provided
earlier in the charge, it is clear that the charge did not authorize the jury to convict Latham unless
it found (1) that Dickey had escaped, (2) that Dickey had previously been under restraint by Latham,
who was a public servant acting pursuant to a court order, and (3) that Dickey had been in custody
in connection with any or all of three listed felony convictions. Because there was no missing
element of the offense in the trial court's jury charge, the charge was correct in that respect. Harm
analysis is unnecessary.
            We overrule Dickey's final point of error and affirm the trial court's judgment.
 
 
 
                                                                        Josh R. Morriss, III
                                                                        Chief Justice

Date Submitted:          February 23, 2006
Date Decided:             March 14, 2006

Publish