Vincent Bernard DICKEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–05–00092–CR.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 23, 2006.

Decided March 14, 2006.

Cynthia L. Braddy, Sulphur Springs, for appellant.

Kelli M. Aiken, Asst. Dist. Atty., F. Duncan Thomas, County Dist. Atty., Sulphur Springs, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

While part of an inmate work crew[1] in Greenville working under the supervision of jailer Dixon Latham, Vincent Bernard Dickey stripped off his "jail stripes" and ran away from the work crew in his T-shirt and boxer shorts. Dickey found some clothes at his mother's house and managed to elude authorities until the following day, when he was found hiding in a closet in the vacant side of a local duplex. As a result of the incident, Dickey has now been convicted of escape.[2] *See* TEX. PEN. CODE ANN. § 38.06(a), (c).

On appeal, Dickey (1) argues the evidence was legally and factually insufficient to prove various elements of the offense as set out by the Texas Penal Code, (2) asserts there was a material variance between the indictment and the proof, and (3) claims the jury charge failed to include an essential element of the offense. We disagree and affirm the judgment of the trial court.

Of Dickey's three points of error, the first and second, briefed together, present seven, different, substantive issues. Six of those issues challenge the evidentiary suf-ficiency of different elements of the offense, while the seventh issue concerns an alleged material variance between the indictment and the proof at trial. In recent years, this Court has repeatedly warned litigants not to combine multiple issues into a single point of error, thereby risking our overruling the composite point of error as multifarious. *See, e.g., Newby v. State,* 169 S.W.3d 413, 414 (Tex.App.-Texarkana 2005, no pet.); *Harris v. State,* 133 S.W.3d 760, 764 n. 3 (Tex.App.-Texarkana 2004, pet. ref'd); *Parra v. State,* 935 S.W.2d 862, 875 (Tex.App.-Texarkana 1996, pet. ref'd). In the interest of justice, however, we decline the opportunity to overrule Dickey's first two points of error on the basis of them being multifarious.

### (1) The Evidence Is Sufficient to Support the Conviction

There are three elements in the offense of escape: "(1) escape (2) from custody (3) after having been arrested for, charged with or convicted of an offense." *Scott v. State,* 672 S.W.2d 465, 466 (Tex.Crim.App. 1984); *see also* TEX. PEN.CODE ANN. § 38.06 (Vernon 2003). The Texas Penal Code defines "escape," as that term is used in Chapter 38, as an "unauthorized departure from custody or [a] failure to return to custody following [a] temporary leave for a specific purpose or limited period...." TEX. PEN.CODE ANN. § 38.01(2) (Vernon

---

1. Although he was in the Hunt County jail on a parole revocation warrant, Dickey was allowed by the Hunt County Sheriff to leave the confines of the jail to perform lawn care work with the work crew. Section 508.254(c) of the Texas Penal Code requires that a person being detained pursuant to a parole revocation warrant remain confined until the Board of Pardons and Paroles conducts a hearing on a charge of a parole violation, an ineligible release, or a violation of a condition of mandatory supervised release. *See* TEX. GOV'T CODE ANN. § 508.254(c) (Vernon 2004). At oral argument, neither Dickey nor the State could direct our attention to any statutory authority that would permit a sheriff to assign such an inmate to a trustee work crew that was being taken from the grounds of the county jail.

2. As charged, the offense of escape was a third-degree felony. TEX. PEN.CODE ANN. § 38.06(a), (c) (Vernon 2003). Dickey subsequently pled "true" to having been previously, finally, and sequentially convicted of at least two other felony offenses as alleged in the indictment. The jury assessed Dickey's punishment at imprisonment for life. *See* TEX. PEN.CODE ANN. § 12.42(d) (Vernon Supp.2005).

2003). The term "custody" is defined as being "under restraint by a public servant pursuant to an order of a court. . . ." TEX. PEN.CODE ANN. § 38.01(1)(A) (Vernon 2003).

In reviewing the legal sufficiency of the evidence, we examine the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In reviewing for factual sufficiency, we view all the evidence in a neutral light and determine whether the evidence supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt or whether evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Threadgill v. State*, 146 S.W.3d 654, 664 (Tex.Crim. App.2004) (citing *Zuniga v. State*, 144 S.W.3d 477, 486 (Tex.Crim.App.2004)).

In the case now on appeal, the State's indictment, which was substantially tracked by the jury charge, alleged four alternative theories of how Dickey escaped from custody:

Theory 1: Dickey escaped from the custody of Latham after being convicted of felony theft in cause number 15,696.

Theory 2: Dickey escaped from the custody of Latham after being convicted of the felony of delivery of a controlled substance in cause number 15,-818.

Theory 3: Dickey escaped from the custody of Latham after being convicted of the felony of burglary of a habitation in cause number 15,828.

Theory 4: Dickey escaped from the custody of Latham after being convicted of an offense (an unnamed misdemeanor or felony) for which Dickey was confined to a secure correctional facility.

If the State's evidence is legally and factually sufficient under any of these alternative theories, we must overrule Dickey's sufficiency challenge. *See Sorto v. State*, 173 S.W.3d 469, 472 (Tex.Crim.App.2005) (where jury charge authorizes conviction on alternative theories, verdict of guilt will be upheld if evidence was sufficient on any of theories).

*A. The Evidence Was Sufficient to Show Dickey Was in Custody*

In his first and second issues, Dickey contends the evidence is legally and factually insufficient to prove he was in *custody* at the time he escaped. The evidence at trial showed Latham, a jailer[3] for the Hunt County Sheriff's Department, had taken Dickey and several other inmates from the jail as part of a work crew April 17, 2004. As he had many times before, Latham took this particular group to the Greenville Police Department's satellite office. Latham testified:

> The men pretty well knew their jobs. Some were weed eaters. Some were mowers. We had two mowers that needed repair. Blades replaced on it. The big mower that Vincent Dickey drove was on the trailer and this was too small a lot to roll it off for it. So he got off ostensibly to pick up trash in that site.

When time came for the work crew to return to the jail, Dickey had vanished.[4]

---

**3.** A jailer is a public servant. TEX. GOV'T CODE ANN. § 553.001(2) (Vernon 2004); *State v. Fury*, 186 S.W.3d 67, 74–75 (Tex.App.-Houston [1st Dist.] 2005, pet. filed).

**4.** Latham reported Dickey's escape, and an investigation began. The next day, acting on a tip, Greenville police officer Jerry Denton found Dickey hiding in the closet of the va-

Dickey's parole officer, Tina Shepard, testified Dickey was being held in the Hunt County Jail on a parole revocation warrant on the day he disappeared from the work crew. Shepard also told the jury that the parole revocation warrant related to Dickey's twenty-five-year prison sentences in each of three cases (cause numbers 15,696, 15,818, and 15,828), sentences which Dickey had not yet discharged. The jury also received copies of the judgments of conviction in those cases, as well as a copy of Dickey's post-arrest confession in which he admitted to (a) being locked up on the parole revocation warrant, (b) being taken out of the jail as part of a trustee work crew, (c) running away from the work crew, and (d) removing his "jail stripes" as he ran. Dickey also admitted in that statement that he had "spent most of the night [between the day of his escape and the day of his recapture] on the tracks back down in the woods. I was debating on coming back and turning myself in because I kept thinking about how my mama cried when I was there at [her] house."

On appeal, Dickey argues that the three judgments of conviction in cause numbers 15,696, 15,818, and 15,828 may not suffice as the underlying "court orders" on which Dickey had been in custody at the time of the escape. Dickey contends there must be an additional order from the trial court specifically authorizing Latham—or, alternatively, naming any duly appointed jailer or sheriff's deputy—to take custody of Dickey. We disagree that our law requires such an order.

In general, judgments of conviction in Texas—at least those resulting in imprisonment—direct the sheriff of the convicting county to "promptly and safely" deliver the convicted felon to the Institutional Division of the Texas Department of Criminal Justice ("the Department"), where the

convicted felon is to be confined for the term specified in the trial court's judgment. Thus, the Department's authority to take "custody" of the felon arises from the trial court's original judgment of conviction. If a felon is released to parole or mandatory supervision, the felon remains subject to the reasonable and lawful conditions of release imposed by the Department. This is because release on parole or mandatory supervision is not a form of clemency. *See* TEX. GOV'T CODE ANN. § 508.002 (Vernon 2004). Instead, parole allows the releasee to serve the remainder of his or her sentence outside the walls of a prison under the supervision of the Department's Pardons and Paroles Division. TEX. GOV'T CODE ANN. § 508.001(6) (Vernon 2004). If the felon violates the terms of those conditions, the Board of Pardons and Paroles ("the Board") may issue a parole revocation warrant. The Board's authority to issue such a warrant is statutory, *see* TEX. GOV'T CODE ANN. § 508.251 (Vernon 2004), but the Board's ability to exercise such power is contingent on the Department, and thus the Board, first having been granted custody of the felon by a trial court's underlying judgment of conviction. Thus, the root authority for any parole revocation warrant is the original judgment of conviction itself. It necessarily follows that Dickey's argument on appeal—that an underlying judgment of conviction could not serve as a "court order" by which Latham had lawful custody of Dickey—is meritless. Latham had custody of Dickey pursuant to the parole revocation warrant, which in turn relied on the underlying judgments of conviction. Accordingly, using the standards of review set forth above, we conclude the evidence is legally and factually sufficient to show Dickey was under restraint by Latham, a

cant half of a Greenville duplex. Dickey sub-

sequently gave police a written confession.

public servant, pursuant to the trial court's judgments of conviction in cause numbers 15,696, 15,818, and 15,828 at the time of Dickey's escape. It was unnecessary for those judgments to specifically authorize Latham, by name, to take Dickey into custody.

**B. The Evidence Was Sufficient to Show Dickey Was Incarcerated on a Felony**

■ In his third and fourth issues, Dickey contends the evidence is legally and factually insufficient to show he was incarcerated [5] on any of the three felonies alleged in the indictment at the time he escaped. We disagree.

Shepard testified she had been supervising Dickey's parole for each of his twenty-five-year sentences in cause numbers 15,696, 15,818, and 15,828 before Dickey was placed in the Hunt County jail. According to Shepard, before his escape Dickey had been in jail pursuant to parole revocation warrants issued in connection with those underlying felony convictions. Shepard also told the jury that Dickey had not finished serving his sentence in any of the three underlying felony convictions specifically alleged in the indictment. As discussed above, copies of those underlying judgments had been admitted into evidence, establishing Dickey's convictions for burglary of a habitation, possession of cocaine, and felony theft, each of which resulted in a twenty-five-year sentence. And, in his own custodial confession, Dickey expressed remorse for leaving the work crew, an expression that inferentially acknowledged Dickey knew his participation

in the work crew was limited to staying at the work site and performing the duties assigned by Latham. Accordingly, using the review standards outlined above, we believe the jury could rationally have concluded Dickey was in Latham's custody due to any of three underlying felonies at the time Dickey escaped. *Cf. Lawhorn v. State*, 898 S.W.2d 886, 890 (Tex.Crim.App. 1995) (offense complete when appellant ran from jail transport van); *Harrell v. State*, 743 S.W.2d 229, 230–31 (Tex.Crim.App. 1987) (appellant escaped from VA hospital off prison grounds; conviction affirmed); *Dutton v. State*, 874 S.W.2d 206, 208–09 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd) (evidence showed appellant had not yet discharged twenty-year sentence at time of escape; conviction affirmed).

**C. We Need Not Address Dickey's Confinement in a Secure Correctional Facility**

In his fifth and sixth issues, Dickey contends the evidence is legally and factually insufficient to show he was confined in a secure correctional facility at the time of his escape. But because the evidence is legally and factually sufficient under any of the State's first three theories of prosecution, we need not, and do not, address whether the evidence is sufficient to sustain Dickey's conviction under the fourth theory of the offense outlined by the indictment. *See Sorto*, 173 S.W.3d at 472.

**(2) There Is No Material Variance Between the Indictment and the Proof**

■ In his seventh issue, Dickey contends that a material variance exists be-

---

**5.** Texas statutes do not specifically define the word "incarcerate" or any of its variants. A word that is not statutorily defined is to be given its common, usual meaning. *Martinez v. State*, 924 S.W.2d 693, 698 (Tex.Crim.App. 1996); *Wheeler v. State*, 35 S.W.3d 126, 134 (Tex.App.-Texarkana 2000, pet. ref'd).

Black's Law Dictionary defines "incarceration" as "[t]he act or process of confining someone." BLACK'S LAW DICTIONARY 775 (8th ed.2004). Similarly, Webster's Dictionary defines the word "incarcerate" as "to confine." WEBSTER'S NEW DICTIONARY 278 (Concise ed.1990).

tween the indictment and the proof offered at trial. Dickey asserts that—because the underlying felony judgments in cause numbers 15,696, 15,818, and 15,828 did not specifically designate and authorize Latham, or any Hunt County jailer, to take custody or supervision of Dickey, yet the proof at trial (those same judgments) authorized only the Hunt County Sheriff and officials of the Department to take custody of Dickey—a material variance exists between the indictment and the proof, and Dickey should receive an acquittal.

 "A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial." *Hart v. State*, 173 S.W.3d 131, 144 (Tex.App.-Texarkana 2005, no pet.) (quoting *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex.Crim.App.2001)). "The widely-accepted rule, regardless of whether viewing variance as a sufficiency of the evidence problem or as a notice-related problem, is that a variance that is not prejudicial to a defendant's 'substantial rights' is immaterial." *Id.* (quoting *Gollihar*, 46 S.W.3d at 247–48; *and referencing Rojas v. State*, 986 S.W.2d 241, 246 (Tex.Crim.App.1998)).

> To determine whether a defendant's "substantial rights" have been prejudiced, we must consider two questions: whether the indictment, as written, informed the defendant of the charge against her or him sufficiently to allow such defendant to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime.

*Id.* (citing *Gollihar*, 46 S.W.3d at 248; *Brown v. State*, 159 S.W.3d 703, 709 (Tex. App.-Texarkana 2004, pet. ref'd)).

Dickey's argument is premised on the assumption that Latham could not have lawful custody of Dickey solely pursuant to those underlying judgments of conviction; Dickey argues a second order from the trial court is necessary.[6]

As we have held above, no such separate order was necessary. While acting as a jailer for Hunt County, Latham had lawful and proper custody of Dickey via the Board's parole revocation warrant, an entity with such warrant authority pursuant to its own custodial authority over Dickey as granted by the three underlying judgments of conviction. Thus, because the proof offered at trial showed Latham had proper custody of Dickey, there was no variance, material or otherwise, between the indictment's allegation and the proof offered at trial. Both were to the effect that Latham had proper custody of Dickey.

We overrule Dickey's first and second points of error.

### (3) The Jury Charge Did Not Omit an Essential Element of the Offense

 In his final point of error, Dickey contends the trial court's charge to the jury failed to submit an essential element of the offense. Dickey asserts the charge "failed to distinctly set out in the application paragraph that Dixon Latham, a public servant, must have had custody of Appellant pursuant to a court order...."

 When jury charge error is claimed, we must determine first whether there was error in the charge. *McNatt v. State*, 152 S.W.3d 645, 654 (Tex.App.-Texarkana 2004, pet. granted). If error is found, then we evaluate that error under

---

6. At oral argument, Dickey suggested the trial court in this case could have entered a general "standing order" authorizing any jailer employed by the Hunt County Sheriff to take custody of inmates being held on parole revocation warrants.

the appropriate harm standard set forth in *Almanza*. *Brown v. State*, 122 S.W.3d 794, 803–04 (Tex.Crim.App.2003); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1984) (op. on reh'g). The standard of review for errors in the jury charge depends on whether the defendant properly objected. *Almanza*, 686 S.W.2d at 172. If a proper objection was raised, reversal is required if the error is "calculated to injure the rights of defendant." *Id.* In other words, an error that has been properly preserved is reversible unless it is harmless. *Id.* at 171. If a defendant does not object to the charge, reversal is required only if the harm is so egregious the defendant has not had a fair and impartial trial. *Rudd v. State*, 921 S.W.2d 370, 373 (Tex.App.-Texarkana 1996, pet. ref'd). In this case, Dickey did not raise this objection to the trial court; he must, therefore, show egregious harm if indeed we find error in the charge.

The elements of the offense of escape are "(1) escape (2) from custody (3) after having been arrested for, charged with, or convicted of an offense." *See* TEX. PEN. CODE ANN. § 38.06 (Vernon 2003); *Scott*, 672 S.W.2d at 466; *Russell v. State*, 90 S.W.3d 865, 870 (Tex.App.-San Antonio 2002, pet. ref'd); *Crowder v. State*, 812 S.W.2d 63, 68 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd). The trial court's charge instructed the jury that the term "custody," as it was used throughout the charge, meant "under arrest by a peace officer or under restraint by a public servant pursuant to an order of a court of this state or another state of the United States." Later, in a subsequent application paragraph, the trial court instructed the jury:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 17th day of April, 2004, in Hunt County, Texas, the defendant, Vincent Bernard Dickey, did then and there escape from the custody of Dixon Latham, a public servant, after being convicted [of] a felony offense of Theft of Property of the value of $750 or more but less than $20,000 in Cause 15,696; and/or after being convicted for a felony offense of Unlawful Delivery of a Controlled Substance, namely Cocaine, in Cause 15,818; and/or after being convicted for a felony offense of Burglary of a Habitation in Cause 15,828; or at the time the said Vincent Bernard Dickey was confined in a secure correctional facility, namely the Hunt County jail, then you will find the defendant guilty as charged in the indictment.

Reading the application paragraph in conjunction with the definition of "custody" provided earlier in the charge, it is clear that the charge did not authorize the jury to convict Latham unless it found (1) that Dickey had escaped, (2) that Dickey had previously been under restraint by Latham, who was a public servant acting pursuant to a court order, and (3) that Dickey had been in custody in connection with any or all of three listed felony convictions. Because there was no missing element of the offense in the trial court's jury charge, the charge was correct in that respect. Harm analysis is unnecessary.

We overrule Dickey's final point of error and affirm the trial court's judgment.