In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00184-CR


______________________________




CRYSTAL DAWN WEBB WHITE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 8th Judicial District Court


Franklin County, Texas


Trial Court No. 7,599




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Ross



MEMORANDUM OPINION



 Crystal Dawn Webb White appeals from the revocation of her community
supervision. On December 12, 2003, she was found guilty of bail jumping and failure to
appear and placed on community supervision for ten years. (1) On May 10, 2006, the State
filed a motion to revoke. After an extremely short hearing at which White pled true to the
allegations against her, the court revoked her community supervision and sentenced her
to seven years' imprisonment. (2) The record reflects that there was an agreement with the
State for seven years' imprisonment, a $1,000.00 fine, and a balance of court costs of
$278.00. After asking White whether that was the agreement, and obtaining an affirmative
response, the court sentenced her in accordance with the terms of the agreement. In all
criminal appeals, the trial court is required to provide a certification of the defendant's right
to appeal. Tex. R. App. P. 25.2(d). If a certification showing that the defendant has a right
of appeal is not part of our record, we have no option but to dismiss the appeal. Id.

 In this case, we have a certification stating that White had no right to appeal
because there was a negotiated plea bargain which was followed by the court, and also
had no right to appeal because she had waived that right. Unless the record before this
Court shows that the certification is defective, we have no option but to dismiss the appeal. 
See Dears v. State, 154 S.W.3d 610 (Tex. Crim. App. 2005). 

 When a defendant is alleged to have violated the terms and conditions of
community supervision and the State seeks to revoke, the defendant does not enter a new
plea of guilty or nolo contendere--the defendant enters a plea of true or not true. Tex.
Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon Supp. 2006). Accordingly,
Rule 25.2(a)(2) does not apply so as to limit a defendant's ability to appeal from a
subsequent plea of true to a revocation motion. Jackson v. State, 168 S.W.3d 239, 242
(Tex. App.--Fort Worth 2005, no pet.).

 This conclusion is confirmed by the Texas Court of Criminal Appeals opinion in
Dears. In that opinion, the court stated that the court of appeals misapplied Rule
25.2(a)(2), and held that: "The rule refers only to plea bargains with regard to guilty pleas,
not pleas of true on revocation motions. Regardless of whether a court feels that a
defendant should be 'bound' by an agreement on a plea of true, the plain language of Rule
25.2(a)(2) does not contemplate that situation." Dears, 154 S.W.3d at 613.

 By the plain language of the rule, then, although a certification must be prepared
because this is an appealable order, Rule 25.2(d) (which explicitly incorporates Rule
25.2(a)(2)), limits the scope of the right to appeal based (in relevant part) on whether a plea
bargain is involved. As defined in that portion of the rule, and as set out by the cases cited
above and their predecessors, a plea of "true" does not place a revocation proceeding
inside the definition of a plea bargain. Thus, the court's act in checking the box in the
certification stating that this case is a "plea-bargain case, and the defendant has NO right
of appeal" is incorrect as a matter of law--this is not a plea bargain--and we must
disregard that notation.

 The certification also, however, contains a notation that "the defendant has waived
the right of appeal." If that notation is not defective, then under Rule 25.2(d), we must
dismiss the appeal. The Texas Court of Criminal Appeals has recently revisited the
presentencing waiver scenario. In Ex parte Delaney, No. AP-75,291, 2006 Tex. Crim. App.
LEXIS 2293 (Tex. Crim. App. Nov. 22, 2006), the court reiterated its concern about waivers
signed by defendants who had no idea what sentence would ultimately be imposed. The
court reiterated its holding in Blanco v. State, 18 S.W.3d 218, 219-20 (Tex. Crim. App.
2000), where it upheld a waiver executed after conviction but before sentencing in
exchange for a recommended sentence--and had concluded there was no compelling
reason why the appellant should not be held to his or her bargain. 

 The court went on to emphasize the importance that any waiver of the right to
appeal must be intelligent and knowing, and that when a post-conviction but presentencing
waiver was not bargained for in exchange for an agreed-upon sentence, concerns as to
its validity are raised. Delaney, 2006 Tex. Crim. App. LEXIS 2293, at *5. 

 In this case, as in Delaney, the waiver appears to have been executed before
sentencing. Unlike Delaney, however, in this case the record indicates that there was an
agreement and a recommended sentence, which was followed by the court. This record
shows the situation to be one where the punishment that would be imposed was not
uncertain, and the waiver was entered into in connection with White's determination to
plead true to the allegations that resulted in revocation of her community supervision.

 We have a reporter's record of the hearing in which the trial court recognized that
there was an agreement that White would be sentenced to seven years' incarceration in
return for her plea of true and that she understood that was the agreement. The record
also contains a formal waiver of the right to appeal, which was signed on the date of her
sentencing. After sentencing her, the trial court, a second time, asked White if she had
received the sentence she thought she would, and she indicated that she had. 

 Under most situations, we would be required to direct the district court to issue a
corrected certification. See Dears, 154 S.W.3d at 614. In this case, however, this is not
necessary. The court also noted that the defendant had waived the right of appeal. There
is such a document in this record, signed by White, and dated on the day of the revocation
hearing, in which she expressly waives her right to appeal the revocation of her community
supervision in this case. As stated above, she had agreed to the sentence that the State
was recommending, and the trial court followed that recommendation. Under these facts,
it is thus not apparent that the waiver is invalid or that the certification is defective, and we
have no option but to dismiss the appeal for want of jurisdiction.

 We dismiss the appeal.


 Donald R. Ross

 Justice


Date Submitted: December 19, 2006

Date Decided: December 20, 2006


Do Not Publish

1. The underlying offense appears to have been a forgery charge, which, under Tex.
Penal Code Ann. § 32.21(d) (Vernon Supp. 2006), is a state-jail felony, and thus carries
a much lesser range of punishment than does the offense of bail jumping--which (because
the underlying offense is defined as a felony) is raised by definition to a third-degree felony
by Tex. Penal Code Ann. § 38.10 (Vernon 2003). 

 We note that the bail jumping statute has not been substantively altered since it was
written in 1973--and that the category of state-jail felony did not then exist. State-jail
felonies came into existence twenty years later, in 1993. We may speculate that the
Legislature in 1973 meant nothing more than to match the minimum range of felony
punishment available at the time--a third-degree felony--for failing to appear at a hearing
on any level of felony charge. The result now is to allow punishment by ten years'
incarceration for jumping bail on an underlying offense for which she could have only been
sent to a state-jail facility for a maximum of two years.
2. Although two separate cases were involved at the hearing, only number 7599 is
before this Court. The other case was the final adjudication of a deferred adjudication. 


to the Sixth Amendment nor its Texas constitutional counterpart; he made no
attempt to apply cases involving the application of constitutional analysis to the alleged denial of the
right to cross-examination. 

 It is not sufficient that an appellant globally cite the "Sixth Amendment" and nothing else in
support of his request for reversal. See Vuong v. State, 830 S.W.2d 929, 940 (Tex. Crim. App.
1992). It is incumbent upon counsel to cite specific legal authority and to provide legal argument
based on that authority. Tex. R. App. P. 38.1(h); Vuong, 830 S.W.2d 940; Ex parte Granger, 850
S.W.2d 513, 515 n.6 (Tex. Crim. App. 1993). Where adequate briefing is not provided, the
contention will be overruled. Rhoades v. State, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996).

 Woodall's argument, however, is not based directly upon the Sixth Amendment; rather, it is
a claim that entirely denying that Sixth Amendment right to cross-examination deprived him of the
right to present a defense (the argument that the intoxilyzer was functionally inaccurate), which
would necessarily have to be developed through the process of questioning the expert. 

 We first look to see if his claim was adequately preserved for review. Counsel clearly stated
during discussion with the trial court that this was his legal argument to justify allowing the
examination. The remaining question is whether he adequately informed the court about the nature
of the information he wanted to elicit through that examination. 

 In this case, the record contains general references by counsel to the matters about which he
wanted to question the State's expert. The State argues that the complaint is not preserved because
counsel did not adequately show what evidence he wished to obtain. Tex. R. Evid. 103(a)(2) states
that "Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial
right of the party is affected, and . . . the substance of the evidence was made known to the court by
offer, or was apparent from the context within which questions were asked." See Warner v. State,
969 S.W.2d 1, 2 (Tex. Crim. App. 1998); Greenwood v. State, 948 S.W.2d 542, 549 (Tex.
App.--Fort Worth 1997, no pet.). 

 Counsel presented argument about the proposed ruling for several pages in the record, and
it is apparent that his complaint was that it was unfair to completely prevent him from questioning
the State's expert about the operation of the machine, thus preventing him from attempting to show
that it did not work reliably; this was intended to bolster his contention that the machine did not
adequately control or correlate the actual (as opposed to presumed) temperature of the breath of the
person in calculating his breath-alcohol content. The trial court's response was based, in large part,
on earlier cases and arguments raised by the same counsel, and on the large number of other cases
he had heard involving intoxilyzers. The court stated that 

 Well, I think admissibility is the ultimate test of reliability. And I have read cases in
which it appears to me that the Courts have upheld and found that reliability of the
techniques used by the Intoxilyzer 5000. The test for admissibility has long been a
very simple test, which appears to me, among -- also along with reading those other
cases, that the Courts have long upheld the reliability of this particular machine. 

 Now, absent some expert testimony that would indicate some problems with
the machine -- and we have tried many, many, many, many cases involving the
Intoxilyzer 5000 and I have never heard not one shred of evidence from an expert
witness that would indicate any problem with the machine -- I'm going to grant your
application [State's] just like I did in the other case.


 Under many circumstances, the statements by counsel might not be sufficient to adequately
inform the trial court about the substance of the evidence he wanted to offer. However, in this
instance, it is apparent that counsel and the court both understood the broad picture of the questions
counsel sought to propound and the line of questioning upon which his arguments were based. 

 To preserve error when the issue before the appellate court is whether appellant's counsel was
denied the opportunity to question the testifying State's witness in the presence of the jury generally
about what might have affected his credibility, the defendant need not have shown what his
cross-examination would have affirmatively established; such defendant must merely have
established what general subject matter about which he desired to examine the witness during the
cross-examination and, if challenged, show on the record why such testimony should be admitted
into evidence. Virts v. State, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987); Harris v. State, 642
S.W.2d 471, 479-80 (Tex. Crim. App. 1982); Mumphrey v. State, 155 S.W.3d 651, 662 (Tex.
App.--Texarkana 2005, pet. ref'd).

 When a trial court excludes evidence designed to call into question the credibility of a
witness's testimony, the defendant has less rigid requirements to preserve error for appeal. Virts, 739
S.W.2d at 29; Koehler v. State, 679 S.W.2d 6, 9 (Tex. Crim. App. 1984). In this case, the expert
would have testified about the results of the breath-alcohol test provided by the machine. Clearly,
questions about the claimed shortfall in the machine's capabilities (if these questions were accurately
raised) could have impaired the witness's credibility and would have been directed at raising doubts
that the results about which he was testifying were accurate. In other words, Woodall was not
challenging the admissibility of the test results; rather, he sought to cross-examine the expert witness
to raise doubts about the accuracy of the machine itself and, therefore, the weight the jurors should
attribute to the results of the test it performed.

 Counsel did what was required. Thus, we conclude that the contentions now raised were
adequately preserved for our review.

 We now turn to the question of whether the trial court erred by refusing to allow any cross-examination on this topic. We review a trial court's ruling to admit or exclude evidence under an
abuse of discretion standard. Rankin v. State, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on
reh'g); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). If the
court's decision falls outside the "zone of reasonable disagreement," it has abused its discretion. 
Rankin, 974 S.W.2d at 718; Montgomery, 810 S.W.2d at 391.

 The State's response at trial to Woodall's argument is that the court did not need to "reinvent
the wheel" in this case. (7) The State focuses on the aspects of breath testing that are unquestionably
approved, and then suggests that without some indication that evidence would be elicited from the
cross-examination to show unreliability, the trial court was within its discretion to disallow any
questioning about the machine's operation and its ability to provide accurate results.

 We acknowledge that there is some language in opinions (including one from this Court) to
the effect that the Legislature has "already spoken as to the reliability of intoxilyzer test results." 
Scherl, 7 S.W.3d at 653 n.5. Although within the vernacular, that language is not precisely accurate. 
The Legislature has actually determined that breath-test results are admissible when performed as
required by the Texas Transportation Code; (8) applicable regulations describe the types of machines
that may be used for that purpose and specify the procedures to be utilized by the operators in
performing the tests. The opinions referencing a particular machine use language beyond that
contained within the statute; the use of the brand name "Intoxilyzer" as generally applied in reported
cases is used generically, much as the word "Kleenex" is often used to describe facial tissues. (9)

 The statute provides that the Legislature found the type of scientific tests, when performed
with proper procedures on an approved machine, are sufficiently reliable to be admissible as
evidence. The statute, however, does not provide that the tests are conclusive or that the efficacy of
a particular machine to properly analyze the breath for blood-alcohol content is unassailable. The
mere fact that it has not yet been attacked effectively in a reported case in Texas does not mean that
it is of such undeniable reliability that counsel should not be able to cross-examine a State's witness
to attempt to search out and expose the weaknesses (if any actually exist) which the machine may
possess. (10) 

 Despite the portion of the briefing in which counsel argues to the contrary, a gatekeeper
hearing is not involved in this instance. We reiterate: the scientific principles involved have been
found valid. The results of testing properly done on a breath-test machine have been statutorily
found to be admissible. Neither situation describes the argument before us. 

 The right to present a defense by confronting the State's witnesses for the purpose of
challenging their testimony is a fundamental element of due process of law. Washington v. Texas,
388 U.S. 14, 19 (1967); see Williams v. State, 116 S.W.3d 788, 791(Tex. Crim. App. 2003). 

 In this case, by pretrial ruling the trial court ordered that no cross-examination be made on
the general topic of the possible fallibility of the Intoxilyzer machine. Rule 611(b) of the Texas
Rules of Evidence provides that:

 Scope of Cross Examination. A witness may be cross-examined on any matter
relevant to any issue in the case, including credibility.

Tex. R. Evid. 611(b).

 The allowed scope of cross-examination is broad and wide-ranging and extends to any matter
relevant to the issues. Russell Stover Candies, Inc. v. Elmore, 58 S.W.3d 154, 157 (Tex.
App.--Amarillo 2001, pet. denied); Hogue v. Kroger Store No. 107, 875 S.W.2d 477, 480 (Tex.
App.--Houston [1st Dist.] 1994, writ denied). 

 The accuracy and reliability of the machine is clearly a matter relevant to an issue in the case. 
Several of the ways in which the results generated may be attacked have been eliminated by caselaw
or by legislative fiat. However, this particular mode of attack has not. (11)

 Because the right to present a defense is a fundamental element of due process of law, and
because a violation of that right constitutes constitutional error, we must reverse a trial court's
judgment when such an error is present unless we can determine beyond a reasonable doubt that the
error did not contribute to the conviction. See Tex. R. App. P. 44.2(a) (requiring reversal of
constitutional error unless appellate court determines beyond a reasonable doubt that the error did
not contribute to the conviction); see also Davis v. Alaska, 415 U.S. 308, 318 (1974) (holding that
denial of effective cross-examination is "constitutional error of the first magnitude and no amount
of showing of want of prejudice would cure it"). 

 Woodall entered his nolo contendere plea after the trial court denied his pretrial motions to
permit cross-examination of the State's expert as to the efficacy of the breath-testing machine. 
Consequently, the record before us does not include a full trial. Because Woodall withdrew his not
guilty plea following the trial court's pretrial ruling on his motion and obtained permission to appeal
that ruling, on the record before us we cannot determine beyond a reasonable doubt that the trial
court's erroneous ruling on Woodall's pretrial motion to exclude did not contribute to his nolo
contendere plea, that is, his conviction. See Hale v. State, 139 S.W.3d 418, 420 (Tex. App--Fort
Worth 2004, no pet.).

 Accordingly, we sustain Woodall's contention of error.

 We reverse the judgment and remand the case to the trial court for further proceedings.



 Bailey C. Moseley

 Justice


Date Submitted: January 31, 2007

Date Decided: February 22, 2007


Publish

1. The brief in this case, after setting out a different statement of the case to reflect the factual
and procedural position of this action, provides argument that is (with the exception of one phrase)
identical to the brief presented by counsel in Barfield v. State, No. 06-06-00090-CR, 2007 Tex. App.
LEXIS 566 (Tex. App.--Texarkana Jan. 26, 2007, no pet. h.), filed with this Court at approximately
the same time as this appeal.
2. Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) (To be considered reliable,
evidence based on a scientific theory must satisfy three criteria: (a) the underlying scientific theory
must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have
been properly applied on the occasion in question.).
3. This Court has repeatedly warned litigants not to combine multiple issues into a single point
of error, thereby risking our overruling the composite point of error as multifarious. See, e.g., Dickey
v. State, 189 S.W.3d 339, 341 (Tex. App.--Texarkana 2006, no pet.); Newby v. State, 169 S.W.3d
413, 414 (Tex. App.--Texarkana 2005, no pet.); Harris v. State, 133 S.W.3d 760, 764 n.3 (Tex.
App.--Texarkana 2004, pet. ref'd); Parra v. State, 935 S.W.2d 862, 875 (Tex. App.--Texarkana
1996, pet. ref'd).
4. See Stevenson v. State, 895 S.W.2d 694, 696 (Tex. Crim. App. 1995); Scherl v. State,
7 S.W.3d 650, 653 (Tex. App.--Texarkana 1999, pet. ref'd).
5. In Barfield, it was unnecessary to address this issue because counsel was permitted to engage
in extensive cross-examination of the expert. 
6. We review the trial court's decision to limit a defendant's cross-examination for abuse of
discretion. See Love v. State, 861 S.W.2d 899, 903 (Tex. Crim. App. 1993); Lopez v. State, 200
S.W.3d 246, 256 (Tex. App.--Houston [14th Dist.] 2006, pet. ref'd); Stults v. State, 23 S.W.3d 198,
204 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd).

7. The statement at trial was, "Your Honor, we ask that he can question our experts and our
cops on, of course, what was actually done, but not on whether the Intoxilyzer 5000 is a machine that
works or not. It's been used in this State for awhile, a long time in other States, and this goes back
to that same argument that all of the case law holds that trial courts don't have to re-invent the wheel
at every single trial."
8. Tex. Transp. Code Ann. § 724.064 (Vernon 1999).
9. Likewise, in one circumstance, the Texas Administrative Code uses the term "intoxilyzer"
generically. 1 Tex. Admin. Code § 159.15(d) (2007).
10. We recognize that the state-designed regulations themselves are written in such a way as
to prevent anyone other than law enforcement personnel from testing or using the machines and then
only for the purpose of actually putting them to testing use or for training of others to put them to
use; those who violate those rules risk losing their certification for use of the machine. See 37 Tex.
Admin. Code § 19.4(b), (c)(8) (2006).
11. See generally Hernandez v. State, 116 S.W.3d 26, 38 (Tex. Crim. App. 2003) (Keller, P.J.,
concurring) (The concurrence discusses a situation where reliability of a machine testing for drugs
in urine has not been judicially noticed as reliable and where any reliability is not a matter of
common knowledge. The concurrence contains an extensive, multijurisdictional discussion about
the difficulties of determining the reliability of a device. In that concurrence, it is noted that the
device had been in use for years, a fact which was, perhaps, some evidence of reliability.).