

NUMBER 13-08-599-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

TROY HUFFMASTER,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                   Appellee.

On appeal from the 214th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Vela

Appellant, Troy Huffmaster, appeals his jury conviction for the offense of escape,

a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.06(a)(1), (c) (Vernon Supp. 2009).

The jury, having found true the enhancement allegations that Huffmaster previously had

been convicted of two felony offenses, assessed punishment at twenty-five years'

imprisonment. In three issues, Huffmaster argues (1) the evidence is legally and factually insufficient to support his conviction, (2) the trial court erred in charging the jury, (3) the prosecutor made an improper remark to the jury during closing argument, and (4) the trial court erred in admitting evidence. We modify the judgment and, as modified, affirm the judgment.

## I. Factual Background

On the night of July 5, 2008, Troy Huffmaster was arrested for public intoxication. He was transported to the Port Aransas jail detention facility by Officer Sandra Flores, a sergeant with the Port Aransas Police Department. While they were inside the detention facility's booking area, Officer Flores told Huffmaster to have a seat. As Officer Flores started to do some paperwork, she heard a deputy arguing with someone. Hearing this, Officer Flores told Huffmaster "not to move" and then helped the deputy. At this time, Officer Flores heard Joe Garza, a paramedic who was inside the detention facility, "yell that he [Huffmaster] was escaping." After helping the deputy, Officer Flores immediately ran after Huffmaster, chasing him behind the police station. She caught up to him long enough to pepper spray him, but he kept running.

As the chase entered a residential area, Officer Flores grabbed both of his shoulders. When Huffmaster leaned forward, both of them fell to the ground. Huffmaster struggled with Officer Flores, and she again pepper sprayed him in the face. Huffmaster was on his stomach, and she was on his back. He then tried to bring his arms out from underneath him, trying to turn around, and "[p]ushing his weight back." When he turned around and "lifted one arm up," she put a cuff on it. Then, she put her knee into his back and handcuffed his hands behind his back. Officer Flores suffered a knee injury while

2

struggling with Huffmaster.

Joe Garza, the paramedic who was inside the detention facility when Huffmaster ran out the door, testified that when Officer Flores went to help the deputy with the combative subject, he saw Huffmaster "get up and head for the door." At that point, Garza told Officer Flores that Huffmaster "was running." Garza ran after Huffmaster, but Officer Flores caught up to him first. While Garza was running to where Officer Flores and Huffmaster were, he saw that "she was still struggling with him." He saw Officer Flores "on top of him. He was clearly trying to push her off to, you know, continue getting away. She was able to, you know, keep him contained and took him into custody at that time."

Huffmaster testified he understood he was under arrest for public intoxication. He testified that while he was in the detention facility, "another gentleman I guess they had arrested had come in. And he was screaming and hollering and yelling and they were trying to physically, you know, get him under control. . . . They were fighting with him to get him under control." When defense counsel asked him, "[W]hat reaction did that cause in you?", he said, "I felt fear of my life at that particular point in time . . . I took off running, not knowing where I was going." He said he took off running because "I was afraid . . . I was afraid of a lot of things at that particular point in time." He said he "ran out the door and I had no idea where I was going. I just—I ran." He heard Officer Flores running up behind him, screaming for him to stop. He testified Officer Flores "came up from behind. We went to the ground. She put her knee in my back and leaned over and hit me again with another burst of the pepper spray." When she sprayed him with the pepper spray, he "tried to get [his] hands up to block the spray." He said he had no intention of hurting her. He denied he was trying to either hit or strike her.

3

Huffmaster stated he was on parole and that he had been convicted of the felony offenses of burglary of a habitation, burglary of a building, and theft. For these offenses, he served time in prison and was "paroled out" in 2002.

On cross-examination, Huffmaster testified, without objection, that he had four prior felony convictions: two for burglary of a habitation; one for burglary of a building; and one for second-degree felony theft. He knew he was not allowed to drink alcohol while on parole. He testified he knew "for sure" his parole would not have been revoked because of the public intoxication offense "[b]ecause I've been through the process." He also testified he had nothing to fear from Officer Flores and that he knew he was not free to leave the detention facility. He testified he ran:

> [b]ecause I was afraid. I don't know if anybody in here has ever had an anxiety attack. But I take medication for anxiety. And for whatever reason, at that particular point in time, whether it was something that the gentleman said or just seeing them struggle, all of the anxiety, all the worrying, all the stress came to a head. And I just—I seen them struggling and I freaked out and I took off and I ran. It had nothing to do with my parole. . . .

## II. Discussion

### A. Sufficiency of the Evidence

In issue one, Huffmaster argues the evidence is legally and factually insufficient to sustain his conviction. Specifically, he complains the evidence does not show he intentionally or knowingly intended to escape from the custody of the Port Aransas detention facility.

#### 1. Standard of Review–Legal Sufficiency

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Sanchez v. State*, 275 S.W.3d 901, 902 n.2 (Tex. Crim. App. 2009). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. The trier of fact is the sole judge of the weight and credibility of the evidence. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any inconsistencies in the evidence in favor of the judgment. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

### a. Offense of Escape

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). There are three elements in the offense of escape: "(1) escape (2) from custody (3) after having been arrested for, charged with or convicted of an offense." *Scott v. State*, 672 S.W.2d 465, 466 (Tex. Crim. App. 1984); *Dickey v. State*, 189 S.W.3d 339, 341 (Tex. App.–Texarkana 2006, no pet.); *see* TEX. PENAL CODE ANN. § 38.06(a). "'Escape' means unauthorized departure from custody. . . ." *Id.* § 38.01(2) (Vernon 2003). "'Custody' means: (A) under arrest by a peace officer. . . ." *Id.* § 38.01(1)(A). Accordingly, "it is an element of the offense of escape that the defendant is in custody prior to the offense."

*Lawhorn v. State*, 898 S.W.2d 886, 890 (Tex. Crim. App. 1996). "It is also an element of the offense that the defendant depart from custody without permission." *Id*. "[T]he phrase 'departure from custody' denotes the act of leaving a state of detention or restraint by a peace officer and once the act is done the escape is accomplished." *Id*.[1]

An "escape can occur only after an officer *has* successfully restrained or restricted a suspect—that is, when the officer's grasp has amounted to an arrest." *Warner v. State*, 257 S.W.3d 243, 247 (Tex. Crim. App. 2008) (emphasis in original). For purposes of the escape statute, an arrest is completed when (1) "a person's liberty of movement is successfully restricted or restrained, whether this is achieved by an officer's physical force or the suspect's submission to the officer's authority"; and (2) "'a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" *Medford v. State*, 13 S.W.3d 769, 773 (Tex. Crim. App. 2000).

Proof of knowledge or intent is an inference that may be drawn by the factfinder both from direct evidence and from evidence of the circumstances surrounding the act. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (holding that intent may be inferred from circumstantial evidence such as the words, acts, or conduct of the accused); *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003) (concluding that jury may infer intent from any facts in evidence); *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim.

---

[1]In *Lawhorn*, the court said the State is not required to prove, as an element of the offense of escape, "the notions of flight thereafter and/or continued evasion of arrest." *Lawhorn v. State*, 898 S.W.2d 886, 890 (Tex. Crim. App. 1996). The court of criminal appeals has noted that escape is not a continuing offense. *Fitzgerald v. State*, 782 S.W.2d 876, 881 n.9 (Tex. Crim. App. 1990). In *Fitzgerald*, the defendant and another inmate escaped from prison by cutting their way through a perimeter fence. *Id*. at 879. The court concluded that the defendant "with his cohorts committed the felony offense of escape by moving beyond the bounds of the Beto II Unit without authority, and his offense was complete at that point. . . ." *Id*. The "moment he [defendant] was outside the confines of the penitentiary his escape was *fait accompli*." *Id*. (emphasis in original).

App. 1996) (stating that knowledge is inference drawn by trier of fact from all circumstances). Therefore, a jury can infer knowledge or intent from the acts, conduct, and remarks of the accused and from the surrounding circumstances. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); *LaPoint v. State*, 750 S.W.2d 180, 182 (Tex. Crim. App. 1986).

> b. Analysis

The evidence showed Huffmaster was arrested for public intoxication and that Officer Flores, a Port Aransas police officer, transported him to the Port Aransas jail detention facility. While at the facility's booking area, Officer Flores told Huffmaster "not to move" before she left to help the deputy with the combative subject. Thus, a rational jury could have concluded Huffmaster was under arrest for purposes of section 38.06 because: (1) his liberty of movement was successfully restricted or restrained; and (2) a reasonable person in Huffmaster's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. *See Medford,* 3 S.W.3d at 773. Accordingly, Huffmaster was "in the custody" of Officer Flores when he was under arrest for the offense of public intoxication. *See Warner*, 257 S.W.3d at 247 (holding "the language of the [escape] statute expressly requires that a person have been in custody before he can escape," which means "an escape can occur only after an officer has successfully restrained or restricted a suspect").

Huffmaster testified that when he saw the officers trying to restrain the combative subject, he "felt fear of my life at that particular point in time . . . I took off running, not knowing where I was going." He said he ran because he was "afraid" and because of anxiety. When asked what in particular he was afraid of, he replied, "I was afraid of a lot of things at that particular point in time."

7

After viewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient for a rational jury to find Huffmaster intentionally or knowingly intended to escape from custody while under arrest for an offense. We hold the evidence is legally sufficient to support the guilty verdict beyond a reasonable doubt. *See Fitzgerald v. State*, 782 S.W.2d 876, 879 (Tex. Crim. App. 1990) (holding felony offense of escape was completed the moment an inmate "was outside the confines of the penitentiary . . . without authority").

### 2. *Standard of Review–Factual Sufficiency*

In a factual-sufficiency review, the only question to be answered is: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Grotti v. State*, 273 S.W.3d 273, 293 (Tex. Crim. App. 2008). Evidence can be deemed factually insufficient in two ways: (1) "the evidence supporting the conviction is 'too weak' to support the factfinder's verdict"; or (2) "considering conflicting evidence, the factfinder's verdict is 'against the great weight and preponderance of the evidence.'" *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). When conducting a factual-sufficiency review, we must defer to the jury's findings. *Id*. (citing *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). The court of criminal appeals has "set out three 'basic ground rules' implementing this standard." *Id*. (quoting *Watson*, 204 S.W.2d at 414). First, we must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict. *Id*. (citing *Watson*, 204 S.W.3d at 414). Second, we "may only find the evidence factually insufficient when necessary to 'prevent manifest injustice.'" *Id*. (quoting *Cain*, 958 S.W.2d at 407). Although the verdict is afforded less deference during

a factual sufficiency review, an appellate court is not free to "override the verdict simply because it disagrees with it." *Id*. (citing *Cain*, 958 S.W.2d at 407). Third, we must explain why the evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict. *Id*. (citing *Watson*, 204 S.W.3d at 414).

Viewing the evidence neutrally, we conclude the evidence supporting the conviction is not so weak that the jury's determination is clearly wrong and manifestly unjust, and that the verdict is not against the great weight and preponderance of the evidence. We hold the evidence is factually sufficient to support the conviction. Issue one is overruled.

## B. Punishment Phase

In issue two, Huffmaster argues that during the punishment phase, the trial court and the prosecutor prejudiced the jury by erroneously telling the jurors, in open court and in the punishment charge, that the offense of escape was a second-degree felony, when in fact it is a third-degree felony. Huffmaster fails to cite any supporting authority showing how he suffered harm.

### 1. Preservation of Error

To preserve an issue for appellate review, "the brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "An argument that fails to cite supporting authority presents nothing for review." *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000) (citing *McFarland v. State*, 928 S.W.2d 482, 512 (Tex. Crim. App. 1996) and TEX. R. APP. P. 38.1(h)); *see Dunklin v. State*, 194 S.W.3d 14, 23 (Tex. App.–Tyler 2006, no pet.)*; Willis v. State*, 192 S.W.3d 585, 597 (Tex. App.–Tyler 2006, pet. ref'd); *Dennis v. State*, 151 S.W.3d 745, 752 (Tex. App.–Amarillo 2004, pet. ref'd); *King v. State*, 17 S.W.3d 7, 23

9

(Tex. App.–Houston [14th Dist.] 2000, pet. ref'd) (op. on reh'g). Because Huffmaster has failed to cite supporting authority for his argument, his issue is inadequately briefed and presents nothing for review. TEX. R. APP. P. 38.1(i); *Rocha,* 16 S.W.3d at 20 (argument that fails to cite to supporting authority in support of claim presents nothing for review).

Even if Huffmaster had preserved this complaint, we conclude he suffered no egregious harm by the error in the charge. Section 38.06 provides, in relevant part, that escape is a third degree felony if the accused "is confined in a secure correctional facility; . . . ." TEX. PENAL CODE ANN. § 38.06(c)(2). "'Secure correctional facility' means (A) a municipal or county jail; . . . ." *Id*. § 1.07(a)(45).

In this case, the face of the charging instrument showed the heading "REINDICT." Below the heading, the charging instrument stated, in columnar fashion, "CHARGE: ESCAPE" "STATUTE: TEXAS PENAL CODE SECTION 38.06" "DEGREE: "THIRD DEGREE." The language of the charged offense stated, in relevant part, that Huffmaster

> escape[d] from the custody of Sandra Flores, who was then and there a Port Aransas Police Officer, when the said defendant was under arrest for or charged with the offense of Public Intoxication, and the said defendant was then and there confined in a secure correctional facility, namely, Port Aransas Police Department jail detention facility. . . .

*2. State's Closing Argument*

In her closing argument at the punishment phase, the prosecutor told the jury, the "charge of escape is a second degree felony." Because Huffmaster did not object and obtain any adverse ruling[2] from the trial court, he has failed to preserve error, if any. *See*

---

[2] "To preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his objections to jury argument." *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). "The essential requirement is a timely, specific request that the trial court refuses." *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). Even if the error was such that it could not be cured by an instruction to disregard, the defendant must object and request a mistrial to preserve the error. *Mathis v. State*, 67 S.W.3d 918, 927 (Tex. Crim. App. 2002).

*Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (court held that "a defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal").

   *3. Charge Error*

During the punishment phase, the trial court, while reading the punishment charge to the jury, told the jury, "Members of the jury, you have found the Defendant, Troy Huffmaster, guilty of escape, a felony of the second degree."[3]  When evaluating charge error, we first determine whether there was error in the charge.  *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g).  If so, "the next step is to make an evidentiary review . . . as well as a review of any other part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused."  *Id*.

Here, the charge was erroneous because the jury convicted Huffmaster of third-degree felony escape.  However, we do not find Huffmaster suffered egregious harm.  When, as in this case, an accused complains of an unobjected-to error in the charge, "he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171.  The error must "'go to the very basis of the case,'" "deprive the accused of a 'valuable right,'" or "'vitally affect his defensive theory.'"  *Id*. at 172.  The degree of harm, sufficiently serious to be called "egregious," is present whenever a reviewing court finds the case for conviction or punishment was actually made clearly and significantly more persuasive by

---

[3]The first sentence of the punishment charge read:  "You have found the Defendant, TROY HUFFMASTER, guilty of ESCAPE, a felony of the SECOND DEGREE."

the error. *Saunders v. State,* 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State,* 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). The actual degree of harm is determined in light of the entire charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza,* 686 S.W.2d at 171.

*a. Harm Analysis*

*i. Entire Charge*

In this case, the charge: (1) instructed the jury the indictment alleged for enhancement purposes, that Huffmaster had previously been finally convicted of two felonies-burglary of a habitation and burglary of a building; (2) stated the details of each of these offenses[4]; (3) told the jury Huffmaster had entered a plea of "True" to the enhanced allegations alleged in the indictment and that the jury was instructed to find the enhanced allegations were true; (4) told the jury the "punishment authorized for a second degree felony, when enhanced by two prior felony convictions as alleged in the indictment shall be punished by confinement in the Institutional Division of the Texas Department of Criminal Justice for any term of not less than 25 years or not more than 99 years or for Life"; and (5) instructed the jury as mandated by article 37.07, section 4(a) of the code of

---

[4]Specifically, the charge gave the details of these offenses as follows:

[T]he first previous felony being for BURGLARY OF A BUILDING, on MAY 10, 1994, in Cause Number 92-7-4734, styled "The State of Texas vs. TROY EUGENE HUFFMASTER," in the 24th District Court of Jackson County, Texas, and the second previous conviction being for BURGLARY OF A HABITATION, on OCTOBER 8, 1997, in Cause Number 97-5-16,912-A, styled "The State of Texas vs. TROY HUFFMASTER," in the 24th District Court of Victoria County, Texas, and that the second previous conviction was for an offense that occurred after the first previous conviction became final.

criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art 37.07 § 4(a) (Vernon Supp. 2009).

Here, Huffmaster is accused of the third-degree felony offense of escape. The primary offense was enhanced with two paragraphs alleging two prior, sequential felony convictions for the offenses of burglary of a building and burglary of a habitation. Accordingly, he was subject to sentencing as a "habitual offender" with a specified term of confinement for life, or for any term of not more than ninety-nine years or less than twenty-five years' imprisonment. *See* TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2009).[5] Even though the charge as well as the trial court while reading the charge instructed the jury they had found Huffmaster guilty of second degree felony escape, the punishment range for a second-degree felony, enhanced by two prior, sequential felony convictions, is the same for a third-degree felony, enhanced by two prior, sequential felony convictions. *See id.* (stating that if it is shown at trial for felony offense that defendant has been previously convicted of two felony offenses, punishment range is from 25 to 99 years or life in prison).

---

[5]Section 12.42(d) of the Texas Penal Code provides:

> Except as provided by Subsection (c)(2), if it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the institutional division of the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.

TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2009).

*ii. State of the Evidence and Contested Issues*

The evidence showed that Huffmaster, while under arrest for public intoxication, was in the custody of Officer Flores, a Port Aransas police officer, at the Port Aransas jail detention facility. During that time, he escaped from custody. Huffmaster testified that, after seeing the officers struggle with the combative subject, he ran because he feared for his life and because of anxiety. The jury sentenced Huffmaster to twenty-five years' imprisonment, which is the minimum punishment allowed by section 12.42(d).

*iii. Arguments of Counsel*

During punishment-phase closing argument, the prosecutor explained[6] the punishment range to the jury and that the State had the burden to prove Huffmaster had been previously convicted of two felonies. In his punishment-phase closing argument, defense counsel asked the jury to consider a punishment of twenty-five years.

*iv. Other Relevant Information*

The record does not reflect the jury was confused about the applicable burden of proof or about the punishment range.

---

[6]In relevant part, the prosecutor argued:

I want to explain to you, . . . as to why now you have a minimum of 25 years to life to consider, because I need you to understand that.

One of the allegations that we would have to prove that cannot come to you until after you find him guilty is that this Defendant had been previously convicted of two felony offenses, which makes him what under Texas law is called a habitual felony offender. As a habitual felony offender, the State is then required to prove two prior convictions. And what the Judge has told you and what you heard was the Defendant plead true to those two prior convictions.

[A] habitual felony offender in the state of Texas faces a minimum of 25 to 99 years or life, which brings us to where we are. I didn't want you to feel misled. I didn't want you to feel that all of a sudden we're in a new punishment range. This is an element we have to prove to you during punishment, not during the case in chief but during punishment; and now this is where the punishment range lies.

14

*b. Application*

Based on our review, Huffmaster has not shown the court's failure to instruct the jury he was convicted of third-degree felony escape rather than second-degree felony escape affected the very basis of the case, deprived him of a valuable right, or vitally affected his defensive theory. *See Almanza*, 686 S.W.2d at 172. The trial court instructed the jury on the correct punishment range, and the jury assessed the minimum punishment within that range. We hold Huffmaster did not suffer egregious harm. Issue two is overruled.

*C. Admission of Extraneous-Offense Evidence*

In issue three, Huffmaster argues the trial court erred in admitting evidence of his prior convictions to show motive and intent to escape. After the jury was impaneled and sworn, but before either side presented opening statements, the prosecutor, outside the jury's presence, asked the trial court for permission to address the issue of Huffmaster's four prior felony convictions during the case-in-chief. The prosecutor told the trial court the prior convictions showed Huffmaster's motive and intent to escape. Defense counsel objected "to any mention of [Huffmaster's] prior record during opening statements or until such time as we have a hearing outside the presence of the jury when the Court can rule on it." The trial court did not rule on the objection; it recessed until the following morning. The next morning, the prosecutor argued that case law allowed the State to present evidence of Huffmaster's prior felony convictions to show motive and intent to escape. Defense counsel argued that Texas Rules of Evidence 403 and 404(b) prevented admission of the prior convictions because this evidence "is clearly more prejudicial than probative before the Court." and "I don't think the priors are relevant to prove motive or

15

intent. After hearing the arguments, the trial court allowed the State to reference Huffmaster's prior convictions.

### 1. Standard of Review

When considering a trial court's ruling on the admission of evidence, we "must determine whether the trial court abused its discretion." *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). "We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's judgment if it lies within the zone of reasonable disagreement." *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

### 2. Analysis

### a. Evidence of Prior Convictions

The State did not introduce evidence with respect to Huffmaster's prior convictions during its case-in-chief. Rather, during Huffmaster's direct examination, defense counsel questioned him about his prior felony convictions. Thus, defense counsel opened the door to this issue, allowing the prosecutor to cross-examine Huffmaster about these convictions.[7] Under the doctrine of invited error, a defendant may not create error, whether statutory or constitutional, and then submit that error as a basis for appellate relief. *Polk v. State*, 170 S.W.3d 661, 665-66 (Tex. App.–Fort Worth 2005, pet. ref'd); *see Druery v. State*, 225 S.W.3d 491, 505-06 (Tex. Crim. App. 2007) (holding that "law of invited error estops a party from making an appellate error of an action it induced").

---

[7]The prosecutor did not question Huffmaster about the details of these prior convictions.

*b. Evidence of Parole*

During the State's opening argument at the guilt-innocence phase, the prosecutor told the jury, in relevant part, "We believe the evidence is going to show you that he [Huffmaster] had a motive to escape even on a little public intoxication charge. We believe we are going to show you he has direct intent to escape from that facility because he's on parole." Counsel did not object to this argument.

During the State's case-in-chief, the prosecutor asked Officer Flores the following questions:

Q.      [D]id you inventory the Defendant's property?

A.      Yes.

Q.      And did you find anything curious in his property?

A.      I did. I found a paper where he was on parole.

Q.      Okay. And during the course of your investigation, did you confirm he was on parole?

A.      Yes.

Q.      And who did you contact to confirm that?

A.      I actually—it's on his CCH record, the one record that I was able to see after. Then I realized this is why he was running. He was trying to get away. And what kept going through my mind was if somebody is on parole, they know they're going back. . . .

Counsel did not object to this testimony.

Even if we construe defense counsel's objection to the admissibility of the prior convictions to include any mention of parole, any error in the mentioning of parole in the prosecutor's opening argument was cured. In *Valle v. State*, the court of criminal appeals explained:

17

> To preserve error in admitting evidence, a party must make a proper objection and get a ruling on that objection. In addition, a party must object each time the inadmissible evidence is offered or obtain a running objection. An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection.

*Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) (footnotes omitted); *see Leday v. State,* 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (explaining that "[o]ur rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling,"); *Willis v. State*, 785 S.W.2d 378, 383 (Tex. Crim. App. 1989) (noting that admission of inadmissible evidence is rendered harmless if the same or similar evidence is introduced without objection elsewhere during trial).

Here, defense counsel did not obtain a running objection. Therefore, error, if any, in the prosecutor's opening argument was cured because the same or similar evidence came in elsewhere without objection. *See Willis,* 785 S.W.2d at 383. Issue three is overruled.

## III. Modification of Judgment

An appellate court has the power to correct a trial court's written judgment if the appellate court has the necessary information to do so. *Cobb v. State*, 95 S.W.3d 664, 668 (Tex. App.–Houston [1st Dist.] 2002, no pet.). This power does not depend upon a party's calling the error to the court's attention or raising the issue on appeal. *See French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (adopting reasoning of *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.–Dallas 1991, pet. ref'd) (concluding that authority to reform incorrect judgment "is not dependent upon a request by either party")).

18

The written judgment recites that the underlying offense, escape, is a second-degree felony. However, Huffmaster was indicted for third-degree felony escape, and the jury found him guilty of that offense. The State points out the judgment should be reformed to show the conviction was a conviction for third-degree felony escape from a secure correctional facility. We agree and therefore modify the judgment to show Huffmaster was convicted of third-degree felony escape from a secure correctional facility.

## IV. Conclusion

The judgment of the trial court is modified and, as modified, we affirm the judgment.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 28th day of May, 2009.